[No. F006667. Fifth Dist. July 31, 1987.]

DOUGLAS L. DRUMMOND, Plaintiff and Appellant, v.
COUNTY OF FRESNO et al., Defendants and Respondents.

**COUNSEL**

Hinton & Pashkowski, Hinton & Alfert, Jay S. Linderman, Tanya Pashkowski and Paul D. Fogel for Plaintiff and Appellant.

Stammer, McKnight, Barnum & Bailey, Galen McKnight, Eldridge, Anderson & Weakley, James D. Weakley and Benjamin L. Ratliff for Defendants and Respondents.

OPINION

**FRANSON, Acting P. J.—**

### STATEMENT OF THE CASE

Appellant, Douglas L. Drummond, was severely injured in a swimming accident June 3, 1984, when he was 22 years old. In his complaint, appellant alleges that respondents, Fresno County and Kings County, are responsible for his injuries. However, a claim against respondents was not filed within 100 days of the accident as required by Government Code section 911.2.[1]

Appellant applied to respondents for leave to file a late claim under section 911.4 on February 15, 1985. Fresno County denied the application. Kings County did not respond to the application; thus, it was denied by operation of law. (§ 911.6, subd. (c).)

Appellant petitioned the superior court for an order relieving him from the claim filing requirements as authorized by section 946.6. The court concluded that appellant had shown that he was mentally and physically disabled during the entire 100-day period to an extent sufficient to constitute excusable neglect under section 946.6, subdivision (c)(1) and that he was also physically and mentally disabled during this period within the meaning of section 946.6, subdivision (c)(3). But the court then found appellant had not proved that his application to respondents for relief under section 911.4 was made within a reasonable time after the accrual of the cause of action and denied the petition.

### STATEMENT OF FACTS

On June 3, 1984, appellant was swimming in the Kings River at Laton-Kingston Park when he struck his head on the river bottom and broke his neck. This accident rendered appellant a permanent quadriplegic.

Appellant was hospitalized continuously until November 10, 1984. In July 1984, appellant underwent major surgery when a cervical spinal fusion was performed.

Dr. John Edwards, appellant's treating physician, testified in deposition that when appellant came under his care on June 7, 1984, appellant was able to carry on a rational conversation and had the capacity to request a

---

[1] All further statutory references are to the Government Code unless otherwise noted.

lawyer. At the end of the third month, appellant was physically able to have a call placed to an attorney. While in the hospital, appellant's business affairs concerning insurance and financial matters were handled by his mother because appellant could not write. However, appellant was able to make plans for his home disposition.

During the first month of his hospitalization, appellant was depressed and fairly emotional but did not withdraw or refuse therapy. Initially, he saw his close family and watched television. Appellant was able to read if someone held the book for him but tired easily. He was also able to use the phone with assistance and talked with family members and "concerned citizens." Sometime during the first three months, a speaker was installed in his phone so he could use it more easily.

In July, appellant began daily workouts at the gym, and his spirits improved. At the end of July he began using a device to enable him to write. He also went to a friend's home for the weekend.

By September, appellant was actively involved with his therapists. He was participating in all in-house recreational activities and going on social outings.

Appellant admitted in deposition that while he was in the hospital he could have had someone contact a lawyer for him if he had wanted to do so. However, he was preoccupied completely with his injuries and paralysis and the drastic and sudden changes which they caused in his life. Appellant explained his state of mind in his declaration: "I was depressed, frightened and extremely worried both about my injuries and physical limitations and about my future with those disabilities. It was critically important for me, as far as I was concerned, to concentrate all of my energies on recuperation and rehabilitation therapy during the entire period of my hospitalization. There was virtually nothing else on my mind during the entire period I was in the hospital." Appellant further declared that during the entire period of his hospitalization, he was unaware of any potential cause of action against a public entity or the 100-day claim filing period. He first learned that a claim had to be filed against a public entity when he talked with an attorney on February 12, 1985.

With respect to an explanation for the delay between being released from the hospital on November 10, 1984, and contacting a lawyer on February 12, 1985, appellant stated: "Because of my paralysis and physical disabilities and my mental preoccupation with them, I did not talk to a lawyer or even think about a possible lawsuit related to my swimming accident until

*some time after* I got out of the hospital." (Italics added.) No other evidence concerning this period was presented.

## DISCUSSION

I. *We cannot find the trial court abused its discretion when it held that appellant's application for leave to file a late claim was not made within a reasonable time.*

Section 911.2 requires that a claim relating to a cause of action for personal injury be presented to the public entity within 100 days of the accrual of the cause of action. Under section 945.4 presentation of such a claim is a condition precedent to the commencement of suit against the public entity. When the injured party fails to file a timely claim, "a written application may be made to the public entity for leave to present such claim." (§ 911.4, subd.(a).) If the public entity denies the application, section 946.6 authorizes the injured party to petition the court for relief from the claim requirements.

The court must grant the petition under section 946.6, subdivision (c) if the claimant demonstrates by a preponderance of the evidence that (1) the application to the public entity under section 911.4 was made within a reasonable time not exceeding one year after the accrual of the cause of action and (2) one of the other four requirements listed in section 946.6, subdivision (c) was met. The two requirements pertinent here are that (1) the failure to present the claim was through mistake, inadvertence, surprise or excusable neglect unless the public entity establishes it would be prejudiced if relief were granted (§ 946.6, subd. (c)(1)) or (2) the person who sustained the alleged injury was physically or mentally incapacitated during the entire 100 days and by reason of such disability failed to present a claim during such time. (§ 946.6, subd. (c)(3).)

██ "The determination of the trial court in granting or denying a petition for relief under section 946.6 will not be disturbed on appeal except for an abuse of discretion. [Citation.] Abuse of discretion is shown where uncontradicted evidence or affidavits of the petitioner establish adequate cause for relief." (*Ebersol* v. *Cowan* (1983) 35 Cal.3d 427, 435, fn. omitted [197 Cal.Rptr. 601, 673 P.2d 271].) "However, the trial court's discretion to grant relief is not 'unfettered.' [Citation.] It is ' "to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 [228 Cal.Rptr. 190, 721 P.2d 71].)

"Section 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary . . . ." (*Ebersol v. Cowan, supra,* 35 Cal.3d 427, 435.) The remedial policy underlying the statute is that wherever possible cases should be heard on their merits. (*Ibid.*) Thus, a denial of such relief by the trial court is examined more rigorously than where relief is granted and any doubts which may exist should be resolved in favor of the application. (*Viles v. State of California* (1967) 66 Cal.2d 24, 29 [56 Cal.Rptr. 666, 423 P.2d 818].)

■ Here, the trial court found that appellant had proved by a preponderance of the evidence that he was disabled during the initial 100-day period and further that his disability constituted excusable neglect. However, the court then concluded that appellant had not proved that his application to respondents was filed within a reasonable time of the accident although it was filed within one year. Over eight months had elapsed between the accident and the filing of the application. Over three months had elapsed between appellant's discharge from the hospital and the date appellant first consulted a lawyer.

Appellant asserts that his mental and emotional preoccupation with his permanent quadriplegia and his ignorance of the law as to the claim filing requirements constitute adequate cause for the delay in filing his application and make the delay reasonable as a matter of law. The argument must be rejected.

Appellant had the burden of proving that his application was filed within a reasonable time. As noted by the trial court, the only evidence of appellant's condition after his discharge from the hospital was his statement that because of his physical disability and mental preoccupation he did not talk to a lawyer or think about a possible lawsuit until "*some time*" after he got out of the hospital. The quoted language is too indefinite in meaning for this court to hold that appellant was so preoccupied with his quadriplegic condition after leaving the hospital that he was unable to contact a lawyer before February 12, 1985, *as a matter of law*. Under all of the evidence, including the testimony about appellant's mental and emotional progress and his ability to contact a lawyer while in the hospital, there was room for the trial court to draw an inference that a reasonable person in appellant's position would have consulted an attorney before February 12. Whatever time would have been reasonable for appellant to consult a lawyer under the particular circumstances confronting appellant after he left the hospital was a factual determination to be made by the trial judge which we cannot upset.

Appellant cites *Viles v. State of California, supra,* 66 Cal.2d 24, for the proposition that a "mistake of law" as to the time within which a claim

must be filed when coupled with a devastating mental and physical disability, which the trial court found excused the failure to file a claim within the 100-day period, makes the 8-month delay in seeking leave to file a late claim per se reasonable. In *Viles,* the Supreme Court concluded that because the plaintiff's mistaken belief that he had one year to file an action was the actual cause of his failure to comply with the 100-day claim filing requirement, "his application to the board [nine months after the accident] could obviously not have been made until he discovered his mistake, and the delay was, therefore reasonable under the circumstances. Moreover, having failed to establish prejudice, the state cannot be harmed by the delay." (66 Cal.2d at p. 32, fn. omitted.) This language in *Viles* can be read to suggest that the ground upon which the court finds excusable neglect for failing to file the claim within the 100-day period will ipso facto make reasonable the filing of the application with the board within 1 year. Further, we have found no case, nor has one been cited to us, where the trial court has excused the failure to file a claim within the 100-day period but has then found the application for leave to file a late claim not to have been filed within a reasonable time.

*Viles* does not control this case. First, it is distinguishable in that the plaintiff in *Viles* was operating under a mistaken belief of fact and law, i.e., that he had one year in which to file a claim. (He had been told this by an insurance adjuster who did not represent the public entity.) In the present case, appellant labored under no such mistaken belief. ▮▮ Appellant simply did not know about the claim filing requirements, and ignorance of the time limitation for filing a claim against a public entity is not a ground for allowing a late claim to be filed. (*Harrison* v. *County of Del Norte* (1985) 168 Cal.App.3d 1, 7 [213 Cal.Rptr. 658].)

Second, to apply the *Viles* holding in the manner suggested by appellant would be to create a special class of claimants (those who suffer from a devastating and permanent disability) who would be relieved from the statutory requirement of demonstrating the reasonableness of the delay in filing the application with the public entity. This would nullify the requirement that the trial court must exercise its discretion in determining whether the plaintiff filed his application within a reasonable time. (See *Baber* v. *Napa State Hospital* (1984) 154 Cal.App.3d 514, 518 [201 Cal.Rptr. 432].)

Although a remedial statute is involved, this court's review power must be kept in perspective: "[W]e must be constantly aware of the different functions performed by the superior court and ourselves. Unless, ultimately, each case of this nature is to be decided by the Court of Appeal as if no trial court had ever acted on the petition, we must be careful to preserve the area of the superior court's discretion and we must do this in fact, as well as in

words. It is easy enough to give the appearance that the respective functions of the two courts are being preserved: all we need do is label as an 'abuse of discretion' any ruling with which we happen to disagree. Admittedly, in this area, denials of relief 'are scanned more carefully than cases where the court granted the relief, to the end that wherever possible cases may be heard on their merits. . . .' [Citation.] Yet we cannot arbitrarily substitute our judgment for that of the trial court." (*Bennett* v. *City of Los Angeles* (1970) 12 Cal.App.3d 116, 120 [90 Cal.Rptr. 479].)

The judgment is affirmed.

Martin, J., and Best, J., concurred.

A petition for a rehearing was denied August 27, 1987, and appellant's petition for review by the Supreme Court was denied October 14, 1987.