[No. F009522. Fifth Dist. May 16, 1989.]

STATE COMPENSATION INSURANCE FUND, Plaintiff and Appellant, v.
SELMA TRAILER AND MANUFACTURING COMPANY et al., Defendants and Respondents;
IGNACIO GUZMAN et al., Interveners and Appellants.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

■■■■■■■■■■■■

COUNSEL

Krimen, Bjornsen & Klein, Phillip G. Kinett, Duane Pang and Robert Shannon for Plaintiff and Appellant.

Mushines, Van Doren, Cook & Morris and John W. Morris, Jr., for Interveners and Appellants.

Pillsbury, Madison & Sutro, Walter R. Allan, W. Robert Buxton, F. John Nyhan, Joseph A. Hearst, Popelka, Allard, McCowan & Jones, James N. Sinunu and Sharon Glenn Pratt for Defendants and Respondents.

OPINION

**BROWN (G. A.), J.**[*]—Plaintiff State Compensation Insurance Fund (State Comp) and interveners Ignacio Guzman and Olga Guzman appeal from the judgment following the trial court's order dismissing their respective complaint and complaint-in-intervention under the three-year statute for delay in prosecution (Code Civ. Proc., § 583.410).[1]

PROCEDURAL BACKGROUND AND FACTS

On October 9, 1981, intervener Ignacio Guzman (intervener/employee) suffered serious work-related injuries when he allegedly fell from the elevated basket of a manlift in the process of pruning walnut trees. Guzman worked for Cesar Fernandez, a labor contractor who had been hired by the

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]Code of Civil Procedure section 583.410 provides: "(a) The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion or on motion of the defendant if to do so appears to the court appropriate under the circumstances of the case.

"(b) Dismissal shall be pursuant to the procedure and in accordance with the criteria prescribed by rules adopted by the Judicial Council."

Code of Civil Procedure section 583.420, subdivision (a)(2)(A) provides: "(a) The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred:

" . . . . . . . . . . . . . . . .

"(2) The action is not brought to trial within the following times: [¶] (A) Three years after the action is commenced against the defendant unless otherwise prescribed by rule under subparagraph (B)."

Unless otherwise indicated, all statutory references hereafter are to the Code of Civil Procedure.

owner of a walnut orchard, defendant Serafin Berberia, Jr., to prune the trees. State Comp was Fernandez's workers' compensation carrier. The manlift, also known as a "TreeFarmer," which Fernandez owned was manufactured in the 1960's by defendant Selma Trailer and Manufacturing Company in Selma. In 1971 defendant Chamberlain Manufacturing Corporation acquired Selma Trailer and manufactured this line of equipment through its Manlift Division until 1976. The other manufacturing defendants were subsequent owners of the manufacturing division.

On October 8, 1982, pursuant to Labor Code section 3852,[2] State Comp filed suit against the manufacturing defendants based on the disability and rehabilitation benefits it was required to pay to Guzman. On September 17, 1985, interveners, Guzman and his wife, pursuant to court order, filed a complaint-in-intervention alleging causes of action against the manufacturing defendants for strict product liability, the landowner defendant Berberia for negligence and willful failure to warn, and both the manufacturing and landowner defendants for loss of consortium.[3] State Comp amended its complaint to substitute in the other manufacturing and landowner defendants. Between September 24 and October 3, 1985, State Comp and interveners served the defendants. On October 7, 1985, State Comp and interveners filed returns of summons and proofs of service.

Defendants filed answers to the complaint and complaint-in-intervention, cross-complaints against one another for equitable indemnity and answers to the cross-complaints between November 1985 and early January 1986.

In September 1986, defendants filed motions to dismiss the complaint and complaint-in-intervention for delay in prosecution. According to the moving papers, State Comp's almost three-year delay in serving its complaint had resulted in prejudice to defendants due to the loss of evidence including important records from the Selma plant. Defendants also urged the timing

---

[2] Labor Code section 3852 provides in pertinent part: "The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. Any employer who pays, or becomes obligated to pay compensation . . . may likewise make a claim or bring an action against the third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee or to his or her dependents. . . ."

[3] Labor Code section 3853 provides for mandatory consolidation of employee and employer third party actions: "If either the employee or the employer brings an action against such third person, he shall forthwith give to the other a copy of the complaint by personal service or certified mail. Proof of such service shall be filed in such action. If the action is brought by either the employer or employee, the other may, at any time before trial on the facts, join as party plaintiff or shall consolidate his action, if brought independently."

of the dismissal periods was the same for interveners as it was for State Comp.

The trial court denied the motion without prejudice. While observing the issue was "a very close one," the court stated it believed the interests of justice under the circumstances required the policy favoring a trial on the merits should prevail. It was unable to conclude at that time that defendants had suffered or would suffer substantial actual prejudice as a result of the delay.

In June 1987 at-issue and counter at-issue memoranda were filed in the trial court by interveners and the landowner defendant. On July 8, 1987, the court served notice on the parties that trial was calendared for October 23, 1987, 14 days after the running of the 5-year mandatory dismissal statute for failure to diligently prosecute.

On July 28, 1987, defendants renewed their motion to dismiss. Once again, defendants argued because the complaint and complaint-in-intervention had not been served until almost four years after the accident, material evidence had been lost resulting in substantial prejudice to them. Defendants urged additional evidence had been lost, including evidence purportedly lost by the employer and the intervener/employee, since the time of the first dismissal motion resulting in prejudice to defendants. Defendants also complained State Comp had, intentionally or otherwise, frustrated their (defendants') discovery and trial preparation. Plaintiff and interveners disputed each of defendants' factual contentions.

On July 30, 1987, State Comp filed a motion to specially set trial to commence not later than October 7, 1987, the date upon which the five-year mandatory dismissal statute ran. An order shortening time was issued so that the motions to dismiss and to specially set trial, as well as a motion by manufacturing defendants to compel further answers to interrogatories from State Comp, were argued and submitted on August 27, 1987.

On September 10, 1987, the trial court issued its order dismissing the complaint and complaint-in-intervention, denying the motion to specially set, and finding the motion to compel moot. Plaintiff and interveners appeal the judgment of dismissal.

The intervener/employee who was rendered a quadriplegic as a result of his fall did not know how the accident occurred. He was pruning one-half of a tree while Fernandez, his employer, was pruning the other half. The last thing the employee remembered was that the two had been working for

several hours and lunch time was approaching. It is not clear from the record what the employer, apparently the only person present at the time, knew or could remember about the accident.

According to plaintiff's and interveners' apparent theory of the case, the basket of the manlift on which the employee stood at the time of the accident was defective. A safety device, namely, a perimeter ring around the basket, could theoretically have prevented the employee's fall. Also, it was apparently their position that had the basket door opened to the inside rather than the outside, the fall would not have occurred.

The manufacturing defendants pursued alternative, intervening or contributing causes of the accident as possible defenses. One defense theory was that the employee slipped and fell due to the employer's contributory negligence. According to the employee, the hydraulic saw which Fernandez had supplied him for pruning the trees had been leaking hydraulic fluid from the saw's control handle over the two weeks preceding the accident. Each time the employee reported the leak, the employer would take the saw to have it repaired. However, the control handle continued to leak. Sometimes when it leaked, the fluid spilled on the floor of the basket and his feet would slip. Based on these facts the defendants were prepared to argue the saw control handle must have leaked on the date in question and caused the accident.

Another defense theory was that the basket had been modified after delivery to the first purchaser of this particular Treemaster such that the modification contributed to the accident. Defendants were also apparently investigating the Guzmans' separation during the pendency of the action and its effect on Mrs. Guzman's cause of action for loss of consortium.

The purported material evidence which defendants claimed had been lost due to the delay in service related to these various defense theories. First, Guzman in 1983, after the accident but before he intervened in the action, threw away the clothes and gave away the boots he was wearing at the time of the accident. The clothes and boots were oil stained due to the saw leak. According to defendants, they could have offered the clothes and boots as evidence of the cause of the accident.

Second, the repair shop which had performed repair work on the employer's hydraulic saws and Treemaster had thrown away its records of repairs made around the time of the accident. To comply with state law, the shop kept repair records for five years and then discarded them. According to defendants, such records could have been relevant on the issue of the

employer's contributory negligence. Defendants also argued the employer Fernandez had destroyed his repair records for 1981. There is no evidence in the record, however, to support this claim other than defense counsel's own argument to that effect.

Also, possible defense witnesses on the issue of the Treemaster's modification had died or become disabled according to defendants. First, a former Selma Trailer chief draftsman and engineering drawing checker died in late 1982. Second, another Selma Trailer employee whose deposition was scheduled for June 2, 1987, could not appear and died on June 26, 1987. Also, the manager of the repair shop where Fernandez had his Treemasters repaired died in 1984. Further, the two previous owners of the Treemaster in question were not deposed due to their purported declining health. Lastly, the defendant landowner Berberia died in March 1986 before any discovery was instituted.

Further, the intervener Guzman threw away records prepared by those who were hired to provide him with home health care. During at least a portion of the time Guzman received home health care he was separated from his wife. Defendants theorized the records could have contained admissions against interest on the issue of loss of consortium.

## DISCUSSION

There are two central issues in this case: (1) Did the trial court abuse its discretion in dismissing the complaint for delay in prosecution under the three-year discretionary dismissal statute (§ 583.410; § 583.420, subd. (a)(2)(A) [fn. 1, *ante*]); (2) as to the complaint-in-intervention, did the trial court properly calculate the time for discretionary dismissal to commence from a date earlier than the date of filing the complaint-in-intervention?

## I.

## DISMISSAL OF COMPLAINT

■ The burden is on the plaintiff and intervener to show an abuse of discretion.

"When the trial court has ruled on [a discretionary motion to dismiss], ' "unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 . . . .) ' "The burden is on the party

complaining to establish an abuse of discretion . . . ." ' (*Denham* v. *Superior Court, supra,* at p. 566.)" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].)

A further principle particularly applicable herein is "as the delay between filing of the complaint and the motion to dismiss increases from two years to five, 'the showing required to excuse a failure to bring a case to trial grows greater and greater.'" (*Cubit* v. *Ridgecrest Community Hospital* (1987) 194 Cal.App.3d 1552, 1566 [240 Cal.Rptr. 346].)

■ An overview of the critical dates shows a singularly impressive record of delay and lack of diligence on the part of the plaintiff. The complaint was filed one day short of the statute of limitations and was not served until within two weeks of the running of the mandatory three-year service statute (§§ 583.210, 583.250). The plaintiff conducted no discovery in the action, apparently relying on the interveners to do the discovery. From the plaintiff's almost total inactivity both before and after the complaint-in-intervention, it appears to us the plaintiff was waiting for the injured employee Guzman to become a party and carry the burden of prosecution. The first at-issue memorandum was filed in June 1987, some three or four months short of the running of the mandatory five-year dismissal statute. (§ 583.310.) The matter was set for trial on a date 14 days after the 5-year statute had run. The motion to specially set was denied and the motion to dismiss was granted, approximately one month short of the five-year statute.

Pursuant to the authority in section 583.410, subdivision (b) (see fn. 1, *ante*), the Judicial Council adopted California Rule of Court, rule 373(e), which sets forth the criteria expressed in the form of relevant matters to be considered in passing upon the motion to dismiss: "(e) In ruling on the motion the court shall consider . . . the availability of the moving party and other essential parties for service of process; the diligence in seeking to effect service of process; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the law applicable to the case, including the pendency of other litigation under a common set of facts or determinative of the legal or factual issues in the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and the availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case; and any other fact or

circumstance relevant to a fair determination of the issue. . . ." (Cal. Rules of Court, rule 373(e).)

In ruling on the motion the court noted the following points which it stated were "by no means a full and complete exposition of the basis and reasons underlying this ruling": "First, plaintiffs argue that defendants have not been prejudiced by any of the events averted [*sic*] to because the asserted unavailable evidence is either not relevant or unnecessary in light of other, available evidence (for example, the testimony of Eudy and Danley). That contention is really beside the point, for it is impossible to assess the value or materiality of that which is no longer extant or has faded from memory.

"Second, plaintiffs' responses to the defendants' interrogatories which asked for facts, documents and witnesses pertaining to plaintiffs' claims of product defect and negligence (i.e., Interrogatory No. 27 and following) were answered by patently unsound claims of privilege or by the statement that 'discovery is continuing.' The defendants' interrogatories were first served on June 26, 1987, and the plaintiffs' last responses were served on August 5, 1987, nearly six years after the accident and almost five years after the lawsuit was initiated by State Compensation Insurance Fund. Because the plaintiffs by that time were unable to furnish information about the evidentiary support for their case, are defendants to be foreclosed from deposing plaintiffs' witnesses (assuming they were otherwise unknown to defendents [*sic*] or is the trial judge to be compelled to disrupt the orderly conduct of trial in order to allow the defendants to conduct discovery. Plaintiffs ought not to say that defendants should have earlier served their interrogatories, for if plaintiffs were unable to respond six years after the accident they could not have been in a position to do so at an earlier date."

In addition, we note that no contention is being made that defendants did anything to contribute to the delay in service or prosecution of the plaintiff's case. They were at all times available for service of process, readily answered the complaint and complaint-in-intervention after service was made, and made reasonable responses to interveners' belated discovery efforts.[4] The case was not extremely complex and there was no other litigation pending which contributed to the delay. Further, from all that appears,

---

[4]Interveners did argue that manufacturing defendants impeded discovery by not retaining and indexing records from which information could be readily obtained. While it is undoubtedly a poor business practice to not maintain proper business records, we know of no legal obligation to maintain such records for four years in order that information will be available to a potential plaintiff.

the condition of the court calendar did not contribute to the delay, the first at-issue memorandum having been filed in June of 1987.

The plaintiff seeks to explain this litany of delay by stating it did not pursue service of the complaint because it did not want to prejudice the interveners' rights noting they did not have an attorney to file a complaint-in-intervention until September of 1985. Plaintiffs admit the decision not to serve the complaint for almost three years was a tactical one. We do not consider this excuse to be an adequate one for not having pressed forward with the action. The likelihood is that had the complaint been promptly served, it would have spurred the interveners to earlier action. Be that as it may, in essence the plaintiff's attorney made the tactical decision that the third party claim would be best pursued jointly by the employee and State Comp.

If one accepts counsel's opinion as State Comp's rationale for delaying service, it is difficult to imagine how the employee could have been prejudiced had State Comp promptly served the summons and complaint. In cases involving employee and employer[5] third party claims, "[s]ubstantively, as well as procedurally, employer and employee actions are interchangeable: regardless of who brings an action, it is essentially the same lawsuit." (*County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 874 [140 Cal.Rptr. 638, 568 P.2d 363].)

Plaintiff and interveners argue defendants were not prejudiced by the delay. The evidence of intervening deaths, loss of records and dimmed memories, however, were an adequate basis for the trial court to decide in its discretion that the defendants were prejudiced by the delay.

We conclude the trial court did not abuse its discretion in dismissing the complaint for delay of prosecution.

## II.

### DISMISSAL OF COMPLAINT-IN-INTERVENTION

■ While the compensation carrier and the injured employee are both bound by the one-year personal injury statute of limitations if they file independent lawsuits (*County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d at p. 864), if either intervenes in the other's lawsuit, the complaint-in-intervention may be filed "at any time before trial on the facts" (Lab.

---

[5] "Employer" includes the workers' compensation carrier. (Lab. Code, § 3850, subd. (b).)

Code, § 3853, *supra,* see fn. 3; *Harrison* v. *Englebrick* (1967) 254 Cal.App.2d 871 [62 Cal.Rptr. 831]), thus avoiding the one-year statute of limitation. (*DeMeo* v. *St. Francis Hospital* (1974) 39 Cal.App.3d 174 [114 Cal.Rptr. 280].) This peculiarity gives rise to the problem here which, in broad terms, is: To what extent is each, the compensation carrier or the injured employee, bound or affected by a delay in prosecution by the other?

While the Supreme Court has not definitively spoken to the issue of failure to prosecute in this context, it has expressed its general philosophy regarding the workers' compensation law and the relationship between the employer and employee's claim in third party lawsuits. (*County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d 862.)

"The California workers compensation scheme not only fixes the right of an employee who suffers a job-related injury to recover compensation from his or her employer or fellow employees (see Lab. Code, §§ 3600, 3601) but also significantly defines the rights of action of both an employee and an employer in the event that a third party is responsible for the employee's injury. These statutory provisions are 'primarily procedural.' (*Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 889 [117 Cal.Rptr. 683, 528 P.2d 771].) They seek to insure, first, that, regardless of whether it is the employee or the employer who sues the third party, both the employee and the employer recover their due, and, second, that, as far as possible, the third party need defend only one lawsuit.

"To these ends, the workers compensation statutes set up procedures which guarantee an employee and an employer notice of each other's action, authorize the employee and the employer to intervene in each other's lawsuit, provide for mandatory consolidation of separate employee and employer actions, and grant the employee and the employer the right to share in each other's judgment or settlement. The procedures governing notice, intervention, and mandatory consolidation are relatively straightforward. . . .

". . . . . . . . . . . . . . . . . . . . .

". . . *Substantively, as well as procedurally, employer and employee actions are interchangeable: regardless of who brings an action, it is essentially the same lawsuit.*" (*County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d at pp. 872, 874, italics added.)

In dismissing the complaint-in-intervention the trial court relied upon *Johnson* v. *Santos* (1983) 148 Cal.App.3d 566 [196 Cal.Rptr. 145], a case

decided by this court. In *Santos* an employee sued a third party for work-related injuries; the compensation carrier later intervened. Subsequently, the employee elected arbitration and received an award of damages. The five years for prosecution lapsed before the defendant sought a trial de novo. The defendant then successfully obtained dismissal of the complaint and complaint-in-intervention under the mandatory five-year statute contained at that time in section 583, subdivision (b). The intervener/compensation carrier appealed. (*Johnson* v. *Santos, supra,* 148 Cal.App.3d at pp. 568-569.)

In resolving the question of when the five-year period commenced for the intervener, the court relied on the purpose of intervention and the workers' compensation statutory scheme. (148 Cal.App.3d at pp. 569-571.) To calculate the five years from the filing of the complaint-in-intervention would defeat, in the court's opinion, the purpose of intervention, that is, to avoid delay.

"Intervention is permitted to avoid delay and multiplicity of actions when claims are the same or substantially similar and arise out of the same facts. . . . If section 583, subdivision (b) were construed to mean that the date of an intervener's cause of action is the date to begin the five-year period for bringing causes to trial, an intervener could file his complaint close to the end of the five-year period of the filing of the original complaint and extend the time in which defendant would be subject to litigation to close to ten years. This would defeat the purpose of avoiding delay." (*Id.* at pp. 569-570; see also *Market-Front Co.* v. *Superior Court* (1969) 271 Cal.App.2d 505 [76 Cal.Rptr. 526].)

To the contrary is *Carnation Co.* v. *Superior Court* (*Johnson*) (1969) 1 Cal.App.3d 891 [82 Cal.Rptr. 98]. In that case the injured employee's third party action was dismissed for lack of prosecution under the two-year discretionary dismissal statute just before the five-year mandatory dismissal statute had run. The compensation carrier filed its complaint-in-intervention more than two years after the complaint was filed. The court denied dismissal of the complaint-in-intervention, stating: "We find no abuse of discretion by the trial judge in denying the motion to dismiss as to plaintiff in intervention. The position of a workmen's compensation insurance carrier-intervener in an action for damages for personal injuries is different from that of an injured employee, and the dismissal of the complaint will not affect plaintiff in intervention's right to proceed by itself to recover that portion of the plaintiff's claim for which she has received workmen's compensation benefits from the carrier." (*Id.* at p. 896.)

In various other contexts, the courts have said the complaint and complaint-in-intervention each has a life of its own or, to the contrary, the

vitality of the complaint-in-intervention is dependent upon the vitality of the complaint. While such simplistic and essentially inflexible concepts may contribute to an understanding of the problem, in our opinion they fall short of establishing an acceptable standard by which the lack of diligent prosecution issue can be solved under differing permutations of facts.

For example, in *Chambers v. Santa Cruz City School Dist.* (1987) 193 Cal.App.3d 518 [238 Cal.Rptr. 356], the plaintiffs in an employee and employer third party action failed to serve their complaint within the mandatory three-year period under former Code of Civil Procedure section 581a. Approximately four years after the action commenced the compensation carrier intervened. The trial court dismissed both the complaint and complaint-in-intervention for the plaintiffs' failure to serve the complaint within three years of the filing of the complaint.

The appellate court observed the trial court lacked jurisdiction to do anything else since there was no validly pending action at the time of the purported intervention. In ordering the dismissals, the *Chambers* court relied upon *Floyd Neal & Associates, Inc.* v. *Superior Court* (1977) 72 Cal.App.3d 734 [140 Cal.Rptr. 301], where a similar result was reached under circumstances where the complaint was timely served, however, plaintiff did not file the return of service within the mandatory three-year period. (*Chambers, supra,* 193 Cal.App.3d at p. 523.) The *Chambers* court quoted the following language from *Floyd Neal & Associates, Inc.*: " 'Thus, while it is true that *had the complaint in intervention been validly filed it would have become an independent action with a life of its own* [citation], the court lacking power to order it filed after the expiration of three years, the clerk of the court could not breathe life into it merely by applying a file stamp to it.' " (*Chambers, supra,* at p. 522, quoting *Floyd Neal & Associates, Inc., supra,* 72 Cal.App.3d at p. 739, italics added.) Interveners here rely on the underscored language. (See also *Deutschmann* v. *Sears, Roebuck & Co.* (1982) 132 Cal.App.3d 912 [183 Cal.Rptr. 573].)

In *Rhode* v. *National Medical Hosp.* (1979) 93 Cal.App.3d 528 [155 Cal.Rptr. 797], the employee timely commenced and served a third party lawsuit for injuries. The compensation carrier's complaint-in-intervention was timely filed and served on some defendants. However, the complaint-in-intervention was not served on a manufacturing defendant named as a Doe until after the mandatory three-year period for service of the summons and complaint had expired.

The court held the service of the complaint on the manufacturing defendants within the three-year period satisfied the service and appearance as to

the intervener's complaint and denied the manufacturer's motion to dismiss that complaint.

In so holding, the court relied in part upon the general provisions governing complaints-in-intervention contained in section 387, subdivision (a).[6] The court reasoned the emphasized language of section 387, subdivision (a), strongly suggests an intervention is not to be treated as a separate action, but rather is to be viewed as coming within the original main action. (93 Cal.App.3d at p. 537.) The court then concluded that the vitality of the action in intervention was linked to the vitality of the main action. (*Id.* at p. 539.)

Turning to the formulation of a rule to be applied in this case, we are strongly influenced by the emphasis the cases have always placed on the obligation of a person who has a litigable claim to pursue the claim with alacrity and vigor and the strong public policy in favor of expediting and disposing of litigation. The cases have held claimants are required to show that at all times they have diligently prosecuted their claim. (*White* v. *Mortgage Finance Corp.* (1983) 142 Cal.App.3d 770, 774 [191 Cal.Rptr. 277].) ■ "'"[T]he duty rests upon a plaintiff at every stage of the proceeding to use due diligence to expedite his case to a final determination . . . and no affirmative duty to do more than meet the plaintiff step by step is cast on the defendant."'" (*General Ins. Co.* v. *Superior Court* (1966) 245 Cal.App.2d 366, 368 [53 Cal.Rptr. 777].) Due diligence in prosecuting lawsuits is required in order to "promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed." (*General Motors Corp.* v. *Superior Court* (1966) 65 Cal.2d 88, 91 [52 Cal.Rptr. 460, 416 P.2d 492].) One of the purposes of section 583, subdivision (a), is to expedite the administration of justice to benefit the litigant as well as the general public: "The purposes served by this section [Code Civ. Proc., § 583] are somewhat analogous to those underlying statutes of limitation. Both types of statutes promote the trial of cases before evidence is lost, destroyed, or the memory of witnesses becomes dimmed. The statutes also protect defendants from being subjected to the annoyance of an unmeritorious action remaining undecided for an indefinite period of time." (*General Motors Corp.* v. *Superior Court, supra,* 65 Cal.2d at p. 91.)

■ Indeed, one of the purposes of intervention is to avoid delay. (*Johnson* v. *Santos, supra,* 148 Cal.App.3d at p. 569.) The strong public policy

---

[6] Section 387, subdivision (a), provides in pertinent part: "(a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene *in the action or proceeding.* An intervention takes place when a third person is permitted to become a party *to an action or proceeding between other persons* . . . ." (Italics added.)

favoring expediting litigation is exemplified by the recently passed Trial Court Delay Reduction Act of 1986 (Gov. Code, § 68600 et seq.; Cal. Standards Jud. Admin., §§ 2 & 2.1).

■ We are of the opinion the provisions of Labor Code section 3853 (fn. 3, *ante*) permitting the intervener to file a complaint-in-intervention "at any time before the trial on the facts" do not qualify or eliminate intervener's obligation to pursue his claim diligently from the beginning. The strong public policy in favor of expediting the prosecution of claims still prevails. It operates as a limitation on the right of the intervener to maintain the lawsuit.

If the rule were otherwise, an intervener could wait until close to the end of the five-year mandatory dismissal statute as to the complaint to file his complaint-in-intervention and thereby extend the time in which defendants would be subject to litigation to 10 years. Thus, the time for exercising due diligence must be measured from sometime before filing of the complaint-in-intervention.

In this regard we note all the statutory provisions pertaining to dismissal for failure to prosecute start the statutory time from "after the action is commenced." (See §§ 583.210, 583.310, 583.420.) Consonant with the Supreme Court's observation in *County of San Diego* v. *Sanfax Corp., supra,* 19 Cal.3d 862, that the complaint and complaint-in-intervention substantively as well as procedurally are interchangeable and essentially the same lawsuit, we think it appropriate the clock start running for both the complaint and the complaint-in-intervention from the date "the action is commenced," which is for this purpose the date the complaint is filed.

If a plaintiff has exercised due diligence since the actions are essentially the same lawsuit, an intervener could rely on the plaintiff's diligence. However, if as here, the plaintiff has failed to exercise diligence, then the intervener must demonstrate the exercise of diligence from the date the complaint is filed, not the date of filing the complaint-in-intervention.

This standard is consistent with the statutory scheme, with the observations of the Supreme Court in *County of San Diego* v. *Sanfax Corp.,* and implements the public policy favoring diligent prosecution of lawsuits. Thus this rule gives effect to Labor Code section 3853, authorizing a complaint-in-intervention after the statute of limitations would have otherwise run, but holds the intervener's feet to the fire, so to speak, with respect to vigorous prosecution of his claim.

Lastly, we observe the rule does not operate inflexibly and perhaps unjustly as would be the case if the plaintiff's delays and conduct were imputed to the intervener or vice-versa. Each, the plaintiff and the intervener, will be judged on his/her/its own actions and conduct in pursuing the litigation.

■  Applying this standard to the case at bench, interveners fail the test.

They filed their complaint-in-intervention approximately three weeks short of four years after the accident and three weeks short of the running of the mandatory three-year service requirement. Service was not effected until a few days short of the three-year statute. The first discovery by the interveners was a single set of interrogatories and request for production of documents in March of 1986, followed by a deposition in August of 1986. There was no further discovery until two depositions were taken ten months later in June of 1987. The first at-issue memorandum was filed in June of 1987, about three months short of the five-year mandatory dismissal statute.

The interveners attempt to excuse their delay by asserting they consulted two attorneys who refused to take the case and did not employ the attorneys who filed the complaint-in-intervention until September of 1985, shortly before the complaint-in-intervention was filed. The fact is, however, interveners employed an attorney to handle their workers' compensation claim shortly after the accident. The workers' compensation attorney represented them until settlement of their comp claim in November of 1984. Further, there is no indication in the record Mrs. Guzman was unavailable to seek an attorney for the entire four-year period between the date of the accident and the date the interveners' complaint was filed.

The modern plethora of advertising attorneys and abundance of attorney reference services and the fact the interveners had a workers' compensation counsel, cause us to view with a jaundiced eye the interveners' claim that Mr. Guzman could not earlier, with diligence have found an attorney to take his case. The mental and psychological trauma caused by his quadriplegia did not justify the lengthy delay. (*Drummond* v. *County of Fresno* (1987) 193 Cal.App.3d 1406 [238 Cal.Rptr. 613].)

Measuring the delay from date the complaint was filed, the trial court did not abuse its discretion in dismissing the complaint-in-intervention for lack of diligent prosecution.

## III.

### Did the Trial Court Dismiss the Complaint as a Sanction?*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Martin, Acting P. J., and Hamlin, J., concurred.

---

* See footnote, *ante*, page 740.