**In re Martha KINDLE Claims Against City and County Employees, Agents and Officers for Damages Arising From Assault by Joseph Kindle.**

**No. 18204.**

Supreme Court of South Dakota.

Considered on Briefs on Sept. 1, 1993.

Decided Dec. 8, 1993.

Kindt lawsuit and State Farm contributed nothing toward this settlement.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre, for appellants Hand County and City of Miller.

Rick Johnson and Stephanie E. Pochop of Johnson, Eklund & Abourezk, Gregory, for appellee Martha Kindle.

MILLER, Chief Justice.

Hand County, the City of Miller and agents and officers thereof appeal a trial court's order granting Martha Kindle's motion to extend the time for filing notice of a claim against a public entity or its employees. We reverse.

### FACTS

On May 24, 1991, Martha Kindle (hereinafter Kindle) was abducted from her job at a Miller, South Dakota, day-care center by her estranged husband, Joseph Kindle.[1]

Kindle sought to file an action against Hand County, the City of Miller and their agents and officers (hereinafter Defendants). Kindle asserted that city and county law enforcement officials had earlier promised her protection after she reported she had been raped, subjected to physical violence and threatened by her estranged husband. She claimed said officials still took no action to safeguard her before she was kidnapped and assaulted.

Under SDCL 3–21–2, in order to maintain a lawsuit against a public entity for an injury caused by that entity or its employee, a party is required to serve notice upon the entity within 180 days of the injury. Defendants did not receive notice by the time the statute of limitations expired on November 20, 1991.

1. Joseph Kindle beat Martha, stabbed her with a knife and threatened to kill her. He was arrested, charged with various crimes and eventually pled guilty to kidnapping.

On April 13, 1992, pursuant to SDCL 3–21–4, Kindle moved the circuit court for an extension of time to serve notice. She claimed she had been mentally incapacitated by extreme fear, anxiety and post-traumatic stress syndrome during the time the statute of limitations was running.

The trial court held a hearing where both sides presented expert testimony as to mental incapacity. The court concluded that: "Mental incapacity, for the purposes of SDCL 3–21–4 should be defined more narrowly than a condition where a person cannot generally make sound decisions concerning the general aspects of their life." It found Kindle was mentally incapacitated under the statute "to make any decisions concerning any claims she may have had against law enforcement officers connected with the assaults upon her" and ordered she be permitted to file notice on Defendants. This appeal followed.

## DECISION

### I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DEFINING MENTAL INCAPACITY UNDER SDCL 3–21–4.

■ The legal definition of "mental incapacity" is a question of law. This court reviews trial court's conclusions of law de novo. *Rusch v. Kauker*, 479 N.W.2d 496, 499 (S.D.1991); *Permann v. Department of Labor, Unempl. Ins. Div.*, 411 N.W.2d 113, 117 (S.D.1987).

Under South Dakota law, no action for damages may be maintained against a public entity or official unless written notice of the injury is given to that entity within 180 days of the injury.[2] *Brishky v. State*, 479 N.W.2d 489, 493 (S.D.1991); *Finck v. City of Tea*, 443

N.W.2d 632, 635 (S.D.1989) (holding notice of tort claim to mayor or city finance officer is mandatory).

Under SDCL 3–21–4, the 180–day notice requirement may be extended for up to two years if the injured party is a minor or mentally incapacitated:[3]

> If the person injured is a minor or is *mentally* or physically *incapacitated,* the court may allow that person to serve the notice required by § 3–21–1 within a reasonable time after the expiration of the period of disability. The application to the court to make extended service shall be made within two years of the event upon which the claim is based. (Emphasis added.)

There is no statutory definition of mental incapacity contained in SDCL ch. 3–21, Liability for Public Entities and Public Officials. Therefore, we must look to other statutory and case law to determine what the legislature intended when it used the term "mentally incapacitated."

This court has never decided a case dealing specifically with the definition of mental incapacity under SDCL 3–21–4. However, there is one recurrent and prevailing theme to cases dealing with mental incapacity, mental illness, mental infirmity, unsound mind, or mental impairment as justification to toll statutes of limitation—did the person understand the nature and consequences of his or her action? The analysis of whether a person meets this definition involves an examination of the person's conduct of his or her everyday affairs.

This analysis can be found in many South Dakota contract cases. In an opinion authored by Justice Henderson, this court reversed a trial court's determination that the plaintiff did not comprehend the nature and

---

2. SDCL 3–21–2 provides:

 No action for the recovery of damages for personal injury, property damage, error or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place and cause of the injury is given to the public entity as provided

by this chapter within one hundred eighty days after the injury.

3. The trial court found SDCL 3–21–4 mistakenly refers to SDCL 3–21–1 as requiring notice to a public entity rather than the correct citation to SDCL 3–21–2. We agree this is a typographical or clerical error and trust that the legislature will correct it.

effect of signing a promissory note. *First State Bank of Sinai v. Hyland,* 399 N.W.2d 894 (S.D.1987) (holding lapse of memory, failure to care for property and person and unreasonableness is not sufficient to set aside a contract, a person must fail to comprehend the nature and effect of the transaction); *Shearn v. Anderson,* 74 S.D. 41, 48 N.W.2d 821 (1951) (determining a person must have sufficient mental capacity to understand his act, he must possess sufficient mind and memory to comprehend the nature and character of the transaction); *Egan v. Shindelbower,* 73 S.D. 212, 41 N.W.2d 225 (1950) (holding mental weakness that does not amount to inability to comprehend and understand the nature and effect of the transaction is not sufficient to invalidate a deed); *Meyer v. Kiecksee,* 68 S.D. 43, 298 N.W. 261 (1941).

Similarly, Justice Henderson, writing for this unanimous court, affirmed a trial court's dismissal of an action for damages for assault and battery as being barred by the statute of limitations where testimony showed the plaintiff:

> [W]as not mentally ill; that she was not a danger to herself or others; that she had sufficient understanding or capacity to make responsible decisions concerning herself; that she had the capacity to meet the ordinary affairs of life; that her intelligence level has not been affected; and that she could comprehend her legal rights and liabilities, and manage her own business affairs and property.

*Merkwan v. Leckey,* 376 N.W.2d 52, 53 (S.D. 1985) (resolving claim of mental illness under SDCL 15–2–22(2) to toll SDCL 15–2–15(1)).[4]

In California, a claim against a governmental entity may be tolled for a reasonable period if the failure to file the claim was due to mental incapacity. Cal.Gov't Code §§ 911.2, 911.4, 911.6 (West 1992 & Supp. 1993). In *Tammen v. County of San Diego,*

66 Cal.2d 468, 58 Cal.Rptr. 249, 253, 426 P.2d 753, 757 (1967), the California Supreme Court affirmed the lower court's determination that a plaintiff who was "able to attend to her business affairs with the care and diligence expected of persons in average good health" was not mentally incapacitated under the statute. The court in *Tammen* emphasized the fact that the plaintiff had the presence of mind to contact an attorney within a few weeks of the accident. *Id.; accord Collins v. Dunifon,* 163 Ind.App. 201, 323 N.E.2d 264 (1975) (retaining counsel is evidence of a person's legal capacity for the purpose of the running of the statute of limitations); *Hill v. Clark Equip. Co.,* 42 Mich.App. 405, 202 N.W.2d 530 (1972).

In *Drummond v. County of Fresno,* 193 Cal.App.3d 1406, 238 Cal.Rptr. 613, 616 (1987), the appeals court affirmed a lower court's determination that a plaintiff's depression, fright, extreme worry and preoccupation with his permanent quadriplegic condition did not constitute sufficient mental or physical incapacity to toll the statute. Testimony at trial showed the plaintiff was able to carry on a rational conversation, was able to make plans to leave the hospital and had the capacity to contact an attorney if he desired to do so. *Id.* 238 Cal.Rptr. at 614–15.

Another California court of appeals reversed a lower court decision and found the plaintiff was mentally incapacitated when testimony revealed a man

> who was gravely disabled as a result of a mental disorder, who required periodic hospitalization, who was judicially determined to have been unable to provide for his own food, clothing and shelter as a result of his mental disorder, who required a conservator, who required anti-psychotic medication, who was incapable of sustained

---

4. SDCL 15–2–22 provides in relevant part:

> If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, or against a sheriff or other officer for an escape, was at the time the cause of action accrued, either:

> \* \* \* \* \* \*

> (2) Mentally ill; . . .

> \* \* \* \* \* \*

the time of the person's disability is not a part of the time limited for the commencement of the action.

intelligible conversation even when he was on his medication, whose mental disorder caused him to wander off and disappear, and who apparently did not respond satisfactorily to out-patient treatment.

*Baber v. Napa State Hosp.,* 154 Cal.App.3d 514, 201 Cal.Rptr. 432, 435 (1984). The court placed particular emphasis on the fact that due to plaintiff's illness he was unable to effectively communicate with counsel. *Id.* 201 Cal.Rptr. at 434.

The Supreme Court of Utah vacated a jury award after it determined a victim was not mentally incompetent within the meaning of the statute which tolled the statute of limitations for notice of a claim against the state. *O'Neal v. Division of Family Serv.,* 821 P.2d 1139 (Utah 1991).

> In determining what sort of lack of ability and capacity to protect one's legal rights qualifies for disability protection, courts generally hold that a person is incompetent for the purposes of a provision tolling a statute of limitations "when the disability is of such a nature to show him [or her] unable to manage his [or her] business affairs or estate, or to comprehend his [or her] legal rights or liabilities."

*Id.* at 1142 (quoting 51 Am.Jur.2d *Limitation of Actions* § 187 (1970)).

The Supreme Court of Vermont rejected the argument that a party can be mentally incapacitated only for the matter at issue in litigation. In *Goode v. State,* 150 Vt. 651, 553 A.2d 142 (1988), the court held its tolling provision "requires more than a mental impairment affecting solely the lawsuit in issue." It affirmed the trial court's finding that where the plaintiff was insane solely with respect to the issue in litigation and could function in all other aspects of life, he was not insane under the statute. *Id.; accord Decker v. Fink,* 47 Md.App. 202, 422 A.2d 389, 392–93 (1980) (holding impaired judgment as to medical malpractice action against psychiatrist was not sufficient to toll statute of limitations due to mental incompetency where plaintiff was able to make other decisions).

Courts have applied similar analysis to claims that post-traumatic stress syndrome is a mental condition which tolls statutes of limitations. The Ohio Court of Claims affirmed a panel decision that the plaintiff did not meet her burden of showing unsound mind due to post-traumatic stress syndrome. *In re Lattanzi,* 61 Ohio Misc.2d 546, 580 N.E.2d 541, 544 (Ohio Ct.Cl.1990). Lattanzi sought an extension of time to file a claim for medical expenses under a state victim's reparations fund. *Id.* 580 N.E.2d at 542. She claimed her abduction and rape caused her to experience a high level of stress for months after the incident. *Id.* Testimony showed she suffered from post-traumatic stress syndrome. *Id.* The *Lattanzi* Court applied the "unsound mind" analysis of the Ohio Supreme Court:

> [P]laintiff has the burden of proving that he was suffering from some species of mental deficiency or derangement, so as to be unable to look into his affairs, properly consult with counsel, prepare and present his case and assert and protect his rights in a court of justice.

*Id.* at 544 (citing *Bowman v. Lemon,* 115 Ohio St. 326, 154 N.E. 317, 319 (1926)). The court then found Lattanzi had rationally discussed her case with local authorities, participated in the prosecution of the offenders, changed jobs and successfully handled her daily activities. *Lattanzi,* 580 N.E.2d at 544. The court affirmed the panel's decision that Lattanzi had failed to show unsound mind due to post-traumatic stress.

The courts of New York have applied a similar analysis to claims that post-traumatic stress tolls statutes of limitations. The test is based on a determination of whether post-traumatic stress has resulted in an overall inability to function in society such that the ability to protect legal rights has been lost. *Barnes v. County of Onondaga,* 103 A.D.2d 624, 481 N.Y.S.2d 539 (1984), *aff'd,* 65 N.Y.2d 664, 491 N.Y.S.2d 613, 481 N.E.2d 245 (1985); *McCarthy v. Volkswagen of America, Inc.,* 78 A.D.2d 849, 432 N.Y.S.2d 722 (1980), *aff'd,* 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1980) (affirming individual capable of managing business and social affairs yet incapable of dealing with accident due to post-traumatic neurosis was not insane, statute tolls only for those individuals suffering from overall inability to function in society);

*Anonymous v. Anonymous,* 154 Misc.2d 46, 584 N.Y.S.2d 713 (N.Y.Sup.Ct.1992).

In Kindle's case, the trial court rejected the definition proposed by Defendants' expert, Dr. Frank Dame, a clinical psychologist.[5] The court determined: "Mental incapacity, for the purposes of SDCL 3–21–4 should be defined more narrowly than a condition where a person cannot generally make sound decisions concerning the general aspects of their life." We agree insofar as this definition would incorrectly focus on whether the person made a sound decision, not whether the person was capable of understanding the nature and the consequences of his or her actions. *Accord, Hickey v. Askren,* 198 Ga.App. 718, 403 S.E.2d 225, 228–29 (1991) (stating "the test for mental incapacity is not whether one ... has merely managed his affairs unsuccessfully or badly.... The test is one of capacity—whether the individual, being of unsound mind, *could not* manage the ordinary affairs of his life.").

The trial court defined mental incapacity as "a tendency to avoid any matter related to the traumatic event." This definition equates a tendency to avoid dealing with a traumatic situation as equal to a failure to understand its nature and consequences. The court then concluded that Kindle's avoidance constituted mental incapacity "to make decisions concerning any claim she may have had against law enforcement officers."

 We hold that mental incapacity under SDCL 3–21–4 means the failure to understand the nature and effect of one's actions. In determining whether a person comprehends the nature and effect of his or her actions, a trial court should examine all relevant facts and circumstances of a person's overall ability to function in society and comprehend and protect his or her legal rights. *Sinai,* 399 N.W.2d at 897; *Merkwan,* 376 N.W.2d at 53. Whether or not a person is represented by counsel during the relevant period is part of this overall analysis.

II. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE FINDING THAT KINDLE WAS MENTALLY INCAPACITATED.

 Defendants attack the sufficiency of the evidence to support the trial court's findings on the question of Kindle's mental incapacity. We review a trial court's findings of fact under the clearly erroneous standard. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 296 (S.D.1982); *In re A.M.,* 292 N.W.2d 103, 105 (S.D.1980); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 256 (S.D. 1976). We will not disturb the court's findings unless they are clearly erroneous; the question is whether, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Wolff v. Royal Ins. Co. of America,* 472 N.W.2d 233, 236 (S.D.1991); *Sinai,* 399 N.W.2d at 897. However, the findings of fact must support the conclusions of law. *Centrol, Inc. v. Morrow,* 489 N.W.2d 890, 894 (S.D.1992); *Knodel v. Board of Cnty. Comm'rs,* 269 N.W.2d 386, 390 (S.D.1978).

 The trial court made the following findings concerning Kindle:

[I]t is undisputed that following the attack upon her on May 24, 1991 that Martha was able to make decisions concerning her life in general; she made decisions concerning her work, her divorce, her treatment, and other aspects of personal life.

These findings were based on uncontroverted testimony by Kindle's own expert witness. "A party who introduces a witness to testify on his or her behalf, in the absence of contradictory evidence, is bound by such testimony." *Merkwan,* 376 N.W.2d at 53. Testimony at the hearing showed Kindle communicated with her divorce attorney. She chose to leave the house where she had been abused by her husband and move into an apartment. Two months later she moved back into the house. Kindle obtained a second job and worked two jobs for a period of time. She discussed the assault with prose-

---

**5.** Dr. Dame defined mental incapacity as an impairment of the cognitive thought processes such that a person's perception of reality is so distorted she is unable to accurately interpret the situation she is in or what is going on around her.

The impairment of reasoning and memory renders the person incapable of functioning at a level where she can make plans, solve problems, make decisions and handle responsibilities necessary for everyday living.

cutors and testified at Joseph Kindle's preliminary hearing.

The trial court found that Kindle was able to make decisions concerning the everyday functions of her life but had a tendency to avoid situations involving her abduction. These findings are not clearly erroneous based on the evidence presented. However, the evidence and findings are insufficient to support the trial court's legal conclusion that Kindle was "mentally incapacitated" under the test we have adopted.

Mental incapacity under SDCL 3–21–4 means the failure to understand the nature and effect of one's actions. The trial court found Kindle possessed the overall ability to function in society. Kindle exercised her legal rights to the degree she consulted with her attorney, obtained a divorce and cooper- ated in the criminal prosecution of Joseph Kindle. Additionally, she was represented by her divorce attorney during at least part of the time the statute of limitations was running. These findings are insufficient to support the legal conclusion that she was "mentally incapacitated" under SDCL 3–21– 4.

The order of the trial court is reversed.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.