Sheri J. Storm, Tiffany J. Storm, by her guardian ad litem, William Smoler, and Justin S. Storm, by his guardian ad litem, William Smoler, Plaintiffs-Appellants,

Self Insured Services Company, Involuntary-Plaintiff,

Joe Leean, Secretary, Department of Health and Family Services, State of Wisconsin, Subrogated-Plaintiff,

v.

Legion Insurance Company, Kenneth C. Olson, M.D., Joanne Cooper, Cooper Resource Center, Inc. and Wisconsin Patients Compensation Fund, Defendants-Respondents,

ABC Insurance Company, Defendant,

Marcelo Castillo, M.D., Defendant-Respondent.

Supreme Court

*No. 01–1139. Oral argument April 8, 2003.—Decided July 18, 2003.*

2003 WI 120

(Also reported in 665 N.W.2d 353.)

169

For the plaintiffs-appellants there were briefs by *William Smoler, Pamela J. Smoler* and *Smoler Law Office, LLC,* Madison, and oral argument by *William Smoler.*

For defendants-respondents, Legion Insurance Company and Kenneth C. Olson, M.D., there was a brief by *Patricia C. White* and *David D. Patton & Associates, P.C.,* Bloomfield Hills, Michigan, and *Virginia L. Newcomb* and *Borgelt, Powell, Peterson & Frauen,* Madison, and oral argument by *Virginia L. Newcomb.*

For defendant-respondent, Dr. Marcelo Castillo, there was a brief by *Michael J. Hogan, Ellen L. Wiesner,*

and *Hogan, Ritter, Minix & Pasholk,* Milwaukee, and oral argument by *Michael J. Hogan.*

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals. Sheri Storm appeals a decision of the Winnebago County Circuit Court, Bruce K. Schmidt, Judge, dismissing a number of the defendants in this action on the basis that her claims alleging medical malpractice were not timely filed.[1]

¶ 2. Storm's suit alleges that various psychiatric and psychological health care providers negligently treated her or negligently supervised her treatment between 1990 and 1993. Some of these care providers assert that Storm's suit is time-barred under both the three-year statute of limitations in Wis. Stat. § 893.55(1)(a) (2001–02)[2] and the five-year statute of repose in § 893.55(1)(b) for medical malpractice actions. Storm argues that the statute of repose applies only to the discovery rule of accrual in paragraph (b) of § 893.55(1) and is inapplicable to the injury rule of accrual in § 893.55(1)(a), upon which she relies. She also maintains that she was mentally ill at the time her causes of action accrued, permitting the three-year period to file an action under § 893.55(1)(a) to be extended up to five additional years by application of the disability tolling provision in Wis. Stat. § 893.16. Storm's last day of treatment from the two mental health care providers who are the subject of this appeal

---

[1] At the time this action was commenced, Storm's two children were minors and were added as plaintiffs pursuant to Wis. Stat. § 655.007 (2001–02) with claims of loss of society and companionship.

[2] All references to the Wisconsin Statutes are to the 2001–2002 version unless otherwise indicated.

was more than five years—but less than eight years—before she filed claims against each of them.

¶ 3. We address multiple issues in accepting certification of this appeal. First, does the five-year statute of repose in § 893.55(1)(b) apply to the injury rule of accrual in § 893.55(1)(a)? Based on the plain language of § 893.55(1), we conclude that the five-year repose period in paragraph (b) of that subsection is limited to the discovery accrual rule in § 893.55(1)(b) and has no application to the injury accrual rule in § 893.55(1)(a).

¶ 4. Second, can any of the periods of limitation in § 893.55(1) be extended by application of the disability tolling provisions in § 893.16(1)? We conclude that a person who is mentally ill at the time his or her cause of action for medical malpractice accrues under § 893.55(1)(a) may toll the limitations period under the strictures of § 893.16. We do not reach the issue of whether, or how, the tolling provisions in § 893.16 may extend the periods of limitation defined in § 893.55(1)(b), including its statute of repose.

¶ 5. Third, since § 893.16(1) may toll the period of limitation in § 893.55(1)(a), does use of § 893.16(1) require a factual finding that the plaintiff's mental illness caused him or her to fail to understand a claim so as to timely file it. We conclude that such a finding is required. A mental illness for purposes of § 893.16 is a mental condition that renders a person functionally unable to understand or appreciate the situation giving rise to the legal claim so that the person can assert legal rights or functionally unable to understand legal rights and appreciate the need to assert them. Because this determination is factual in nature and was not addressed by the circuit court, we remand this action to permit the submission of evidence regarding (1) whether Storm suffered from a functionally debilitating

175

mental illness; (2) if she did, when such an illness commenced; (3) whether the illness ever ceased; and (4) if the illness ceased, when it ceased. In addition, we hold that neither the retention of legal counsel by a mentally ill person nor such counsel's filing of a claim on the mentally ill person's behalf causes, as a matter of law, that person's mental illness to cease for purposes of § 893.16.

¶ 6. In all, we conclude that, if Storm was mentally ill at the time her causes of action accrued against each defendant, and if her illness did not cease more than two years before she filed a claim against any of the individual defendants, then Storm timely filed her action alleging medical malpractice against Doctors Olson and Castillo.

## I. BACKGROUND

¶ 7. The facts are taken from the summary judgment record. On January 22, 1990, Sheri Storm began receiving psychiatric treatment from Kenneth Olson, M.D. Doctor Olson provided periodic inpatient and outpatient treatment to Storm after that date. In early 1991, Dr. Olson diagnosed Storm as suffering from a multiple personality disorder, which is referred to in the psychiatric nomenclature as a dissociative identity disorder.

¶ 8. The last day that Storm received treatment from Dr. Olson was August 3, 1992, at which time Olson moved his practice out of Wisconsin. Four days later, Storm applied for Supplemental Security Income (SSI) benefits related to her mental disability, for which she was eventually deemed eligible, retroactive to the date of her application. After August 3, Storm also received treatment from a social worker named Valerie Hamil-

176

ton at the same offices where Dr. Olson had treated Storm. Hamilton had previously assisted Dr. Olson with some of Storm's treatment. The last session between Storm and Hamilton occurred on September 9, 1992. Shortly after Storm discontinued her visits to Hamilton, she briefly received treatment from two other mental health care providers, neither of whom is a subject of this action.

¶ 9. Near the end of 1992, Storm began receiving psychological treatment at the Cooper Resource Center (the CRC). On January 22, 1993, Dr. Joann Cooper, Ph.D., a psychologist who owns the CRC, evaluated Storm and diagnosed her as possessing a multiple personality disorder. In February 1993 Dr. Marcelo Castillo, a physician and the alleged medical director of the CRC at the time, allegedly admitted Storm for inpatient psychiatric treatment to be performed by Dr. Cooper. After Storm was discharged in March 1993, Cooper continued to treat Storm for her disorder on an outpatient basis until September 24, 1993. This was Storm's last day of any relevant involvement with the CRC and Doctors Cooper and Castillo.

¶ 10. On September 9, 1997, Storm filed a medical malpractice suit alleging, among other instances of malpractice, that Doctors Olson and Cooper negligently treated her by using hypnosis to recover memories of childhood sexual abuse that were later found to be untrue.[3] According to Storm, these false memories formed the basis of a multiple personality disorder and

[3] Also originally included as plaintiffs were the Self Insured Services Company, as an involuntary subrogated plaintiff, and the Wisconsin Department of Health and Family Services, as a subrogated plaintiff pursuant to Wis. Stat. §§ 49.89 and 803.03. Self Insured Services was later voluntarily dismissed with prejudice by stipulation of the parties.

caused her suffering. The complaint also named the CRC and Legion Insurance Company, Dr. Olson's professional liability insurer, as defendants.[4] On June 14, 2000, while the case was still undergoing discovery, Storm filed an amended complaint naming Dr. Castillo as an additional defendant. Storm sought a variety of damages alleged to have resulted from the negligent care or supervision of the defendants.

¶ 11. Doctors Olson and Castillo each filed a motion for summary judgment in the fall of 2000, asserting that Storm's action was untimely filed under Wis. Stat. § 893.55(1). Section 893.55(1) prohibits the commencement of a medical malpractice action more than three years from the date of injury or one year from the date of discovery of an injury, whichever is later, but, with respect to discovery, an action may not be filed more than five years from the date of the act or omission giving rise to the alleged injury. Wis. Stat. § 893.55(1). Doctor Olson asserted that Storm was required to commence her action against him by either August 3, 1995, or, assuming that Storm did not discover her injury until on or after August 3, 1996, by August 3, 1997. Similarly, Dr. Castillo claimed that Storm had until either September 24, 1996, or September 24, 1998, to bring her claim against him.

¶ 12. Storm argued that the statute of repose in § 893.55(1)(b) applies only to the discovery rule of accrual in paragraph (b) and is inapplicable to the injury rule of accrual in paragraph (a), upon which she relies. She also contended that Wisconsin's disability tolling statute, § 893.16, applies to actions brought under § 893.55(1)(a) and that she was "mentally ill" at

---

[4] In addition, the Wisconsin Patients Compensation Fund was named as a defendant pursuant to Wis. Stat. § 655.27(5).

the time her causes of action accrued. Therefore, adding the five-year maximum tolling period provided under § 893.16 for someone with a mental illness to the three-year limitations period in § 893.55(1)(a), Storm reasoned that she had until August 3, 2000, to bring her claim against Dr. Olson and until September 24, 2001, to bring suit against Dr. Castillo.

¶ 13. On February 15, 2001, the circuit court granted the defendants' summary judgment motions, determining that § 893.16 does not apply to medical malpractice actions and that Storm failed to commence her suit within either the three-year statute of limitation in § 893.55(1)(a) or the five-year statute of repose in § 893.55(1)(b). By a written judgment dated April 30, 2001, the court dismissed all claims against Dr. Olson, Legion Insurance, and Dr. Castillo.[5] Storm appealed this decision and the court of appeals requested certification, which we granted.

## II. STANDARD OF REVIEW

■

¶ 14. The parties do not dispute the relevant dates catalogued above or that Storm has stated claims for negligence. There are, however, disputed issues regarding these claims. For purposes of the summary judgment motion, the parties contest only the legal effect of the applicable dates. Therefore, summary judgment dismissing these defendants is appropriate if,

---

[5] Dr. Cooper and the CRC did not file motions for summary judgment, did not join either of the other defendants' motions, and did not participate in the summary judgment motion hearing. At the end of the motion hearing, Judge Schmidt directed that Storm's action with regard to Cooper and the CRC be held in abeyance pending the conclusion of this appeal.

179

based on the undisputed facts, the defendants establish that the claims were not timely filed as required under all applicable limitation periods. *See* Wis. Stat. § 802.08(2); *Paul v. Skemp,* 2001 WI 42, ¶¶ 8–9, 242 Wis. 2d 507, 625 N.W.2d 860; *Smith v. Milwaukee County,* 149 Wis. 2d 934, 937, 440 N.W.2d 360 (1989). This issue is one of statutory interpretation, which is a question of law that this court reviews de novo. *Paul,* 242 Wis. 2d 507, ¶ 10.

## III. ANALYSIS

¶ 15. Storm's medical malpractice claims are procedurally governed in large part by Chapter 655, while the time limitations for bringing her claims are circumscribed by § 893.55. To assess the appropriateness of the circuit court's grant of summary judgment, we are required to interpret § 893.55(1) and its interplay, if any, with § 893.16, which is the limitations tolling provision for persons under a disability, including the disability of mental illness. The fundamental goal of our statutory interpretation is to discern the intent of the legislature in drafting these provisions. *See Landis v. Physicians Ins. Co. of Wis., Inc.,* 2001 WI 86, ¶ 14, 245 Wis. 2d 1, 628 N.W.2d 893.

¶ 16. The parties' arguments on appeal track those made before the circuit court, as discussed above. Therefore, our inquiry requires four primary determinations.

¶ 17. First, we address whether the statute of repose in § 893.55(1)(b) applies to all medical malpractice actions, including those brought under § 893.55(1)(a), thereby barring a medical malpractice action from commencing more than five years after the

180

last act or omission giving rise to the claim. Second, we look to whether the disability tolling statute, § 893.16, applies to the periods of limitation in § 893.55. Third, if § 893.16 does toll a limitations period for medical malpractice, we must define "mental illness" under the statute and the standard by which a court determines if a plaintiff is mentally ill and qualifies under the tolling provision. Finally, we address Dr. Castillo's argument that, however the foregoing matters are decided, Storm's disability ceased as a matter of law when she retained or utilized legal counsel.

A. Scope of the Statute of Repose in Wis. Stat. § 893.55(1)(b)

¶ 18. The time limitations for filing medical malpractice actions are provided in subsection (1) of § 893.55, which reads:

> (1) Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
>
> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

The parties dispute the preclusive effect of the five-year statute of repose in paragraph (b). In particular, Doctors Olson and Castillo contend that the repose period absolutely required Storm to file her action against Dr.

Olson no later than August 3, 1997, and against Dr. Castillo no later than September 24, 1998 (five years, respectively, after each doctor ended his involvement with Storm).

██

¶ 19. We conclude under a plain reading of § 893.55(1)(b) that the five-year repose period applies only to actions brought pursuant to the discovery rule in paragraph (b). Paragraph (b) is an alternative limitations period. It permits a claimant, irrespective of the three-year limitations period for injury accrual in § 893.55(1)(a), to file a medical malpractice action up to "one year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered." It then creates an exception, which states that "an action may not be commenced *under this paragraph* more than 5 years from the date of the act or omission." Wis. Stat. § 893.55(1)(b) (emphasis added). The term "paragraph" governs the scope of this five-year period of repose, which, as we have previously held, serves to bar medical malpractice actions even if a claimant has yet to discover a latent injury. *See Aicher v. Wis. Patients Comp. Fund,* 2000 WI 98, ¶¶ 26, 47, 237 Wis. 2d 99, 613 N.W.2d 849.

¶ 20. To ascertain the meaning of the term "paragraph" in § 893.55(1)(b), we look to whether there is any applicable statutory definition of that term. Chapter 35 of the Wisconsin Statutes codifies the rules of publishing and interpreting public documents, including the Wisconsin Statutes. Wisconsin Stat. § 35.18(3) explains how the numbers and sections of statutory provisions are designated. It states:

> All chapters and sections of Wisconsin statutes shall retain their present numbers and titles until changed by the revisor or by statute. Each section shall

182

> be designated by a mixed, decimal number, the whole number corresponding to the chapter and the decimal to the section's place in the chapter. The numbers and titles of chapters and sections shall be printed in boldface type. Each subsection shall be designated by a number, or by a number and a letter of the alphabet, enclosed in parentheses. *Each paragraph shall be designated by a letter or letters enclosed in parentheses.* Each subdivision shall be designated by a number or by a number and a letter. Each paragraph of a subdivision shall be designated by a letter or letters.

(Emphasis added.) By virtue of this statute, the reference to "this paragraph" in § 893.55(1)(b) pertains only to paragraph (b), as § 893.55(1) is a "subsection" of the statute, not a paragraph, and § 893.55(1)(a) is a wholly separate "paragraph" from § 893.55(1)(b). As this court has previously noted, legislative drafters understood the term "paragraph" when § 893.55(1) was being created in 1979. *See Paul,* 242 Wis. 2d 507, ¶ 49 (discussing *Wisconsin Bill Drafters Manual* (Oct. 1976)).

¶ 21. Adoption of the defendants' argument would require this court to ignore the phrase "under this paragraph" in § 893.55(1)(b). The language is plain and unambiguous with respect to its scope. As we stated in *Czapinski v. St. Francis Hosp.,* 2000 WI 80, 236 Wis. 2d 316, 613 N.W.2d 120, "A court will not ordinarily engage in statutory construction unless a statute is ambiguous. 'When a statute is plain and unambiguous, interpretation is unnecessary and intentions cannot be imputed to the legislature except those to be gathered from the terms of the statute itself.'" *Id.,* ¶ 17 (citing and quoting *Harris v. Kelley,* 70 Wis. 2d 242, 249, 234 N.W.2d 628 (1975)).[6]

---

[6] The defendants point to language in the Judicial Council Committee Note to Wis. Stat. § 893.55 stating that "Subsection

¶ 22. The preceding interpretation of § 893.55(1) was signaled by this court in *Paul v. Skemp,* 242 Wis. 2d 507. In *Paul,* we recognized the potential conflict between the periods of limitation and period of repose located in § 893.55(1), observing that "[t]he plain language of Wis. Stat. § 893.55(1) does not indicate whether the five-year statute of repose in § 893.55(1)(b) applies to actions governed by the injury rule of accrual in § 893.55(1)(a)." *Id.,* ¶ 49.[7] The court surmised that the statute of repose did not limit the injury rule of accrual and that:

> a medical malpractice action might be able to be timely filed more than five years after the act or omission under the injury rule of accrual where, for example, the injury occurs more than two years after the negligent act or omission and the action is filed within three years from the injury.

(1) further provides that in no event may a malpractice action be commenced later than 6[5] years from the time of the alleged act or omission." However, the actual language in subsection (1) does not accomplish this result. It fails to do so in certain instances under the injury-occurrence rule of Wis. Stat. § 893.55(1)(a) established by *Paul v. Skemp,* 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860, or when tolling provisions apply to extend the periods in § 893.55, such as in *Landis v. Physicians Ins. Co. of Wis., Inc.,* 2001 WI 86, 245 Wis. 2d 1, 628 N.W.2d 893. If the legislature had intended an absolute bar to any medical malpractice action more than five years after the act or omission giving rise to the injury, then the statute would not have expressly limited the statute of repose created in paragraph (b) to actions commenced under paragraph (b). There is no ambiguity in the wording of the medical malpractice limitations statute that would permit any other reading.

[7] Indeed, the court in *Paul* urged the legislature to provide guidance regarding how to resolve the "possible conflict between actions that arise under the injury rule of accrual and the discovery rule of accrual." *Paul,* 242 Wis. 2d 507, ¶ 49.

*Id.,* ¶ 48. The *Paul* court ultimately decided the issue presented in that case on other grounds, determining that the actionable injury was not the physician's faulty diagnosis but instead was the date of the patient's death. *Id.,* ¶ 45.[8] While *Paul* did not settle the scope of the repose period in § 893.55(1)(b), its reasoning on this matter conforms with the understanding that we presently adopt.

¶ 23. Because the five-year statute of repose in § 893.55(1)(b) does not affect a plaintiff's ability to bring a claim under § 893.55(1)(a), Storm can rely solely upon § 893.55(1)(a) in determining the effective limitation periods within which she needed to bring her claims.

B. Applicability of Wis. Stat. § 893.16(1) to Wis. Stat. § 893.55(1)

¶ 24. Wisconsin Stat. § 893.16 permits a period of limitation in Chapter 893 to be extended for an additional five years if a claimant is mentally ill at the time a cause of action accrues. *See* Wis. Stat. § 893.16(1), (3). Subsection (1) of § 893.16 provides in full:

> If a person entitled to bring an action is, at the time the cause of action accrues, either under the age of 18 years, except for actions against health care providers; or mentally ill, the action may be commenced within 2 years after the disability ceases, except that where the

---

[8] In *Paul,* the decedent's estate filed its suit within three years of the date that an actionable injury occurred and, therefore, it was timely pursuant to Wis. Stat. § 893.55(1)(a). *Paul,* 242 Wis. 2d 507, ¶ 45. In addition, the suit was filed less than five years after the alleged negligent omission. *Id.,* ¶ 49.

disability is due to mental illness, the period of limitation prescribed in this chapter may not be extended for more than 5 years.

■

¶ 25. Storm asserts that she was mentally ill at the time her causes of action accrued and, further, that she continued to be mentally ill until she filed her claims against all the defendants in this action. Therefore, she maintains, the time for her to file suit under § 893.55(1)(a) was extended up to five additional years by application of § 893.16.[9] If this view is correct, Storm had three years from her injury to bring her action under § 893.55(1)(a), plus, by operation of § 893.16(1), an additional five years to bring her claims. As a result, she would have eight years from the date of any alleged injury to bring her action. This would mean she had until August 3, 2000,[10] to file her action against Dr.

---

[9] Storm ultimately asks this court to follow the court of appeals' reasoning in *Robinson v. Mount Sinai Medical Center,* 127 Wis. 2d 285, 379 N.W.2d 326 (Ct. App. 1985). In *Robinson,* the court of appeals held that the 1977 version of the "persons under disability" statute tolls the statute of limitations for filing a medical malpractice claim, by up to five years, if the plaintiff was insane when his or her cause of action accrued. *Id.* at 292. On review, this court upheld the decision on other grounds and we did not reach the applicability of the disability tolling provision. *Robinson v. Mount Sinai Med. Ctr.,* 137 Wis. 2d 1, 10 n.7, 402 N.W.2d 711 (1987).

[10] In the alternative, Storm argues that she had five years from her last session with Valerie Hamilton, a social worker and former aid to Dr. Olson, to bring her claim against Dr. Olson. That session occurred on September 9, 1992, and Storm's initial complaint naming Dr. Olson was filed on September 9, 1997. Hamilton is not a defendant in this action. Storm's theory is that her claims against Dr. Olson were brought within five years of the last negligent treatment performed against her, in

Olson and September 24, 2001, to bring her claims against Dr. Castillo. Storm brought her action against Dr. Olson on September 9, 1997, and impleaded Dr. Castillo in this action on June 14, 2000—both events occurring less than eight years from when she contends the last negligent act or omission was undertaken by each of these defendants.[11]

---

conformity with the repose period in Wis. Stat. § 893.55(1)(b), based on the continuum of negligent care rule expressed in *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 327 N.W.2d 55 (1982), and *Robinson,* 137 Wis. 2d 1. She argues that Hamilton's care was a continuum of negligent care shared with Dr. Olson.

We do not reach this issue for two reasons. First, we substantially rule in Storm's favor on her primary argument—that her action is timely under § 893.55(1)(a)—and determine that Storm had until August 3, 2000, to timely commence her action against Dr. Olson *if* she was mentally ill at the time of Olson's last treatment of her on August 3, 1992. Second, the circuit court did not adequately address Storm's argument on this ground or attempt to apply the controlling law on this subject matter, as outlined by the four-factor test in *Robinson.* The court seemingly ruled either that the matter was not a question to be resolved on summary judgment or that the doctrine cannot apply to a statute of repose. If it is determined on remand that Storm was not mentally ill during the periods required for her to benefit from § 893.16, then Storm will be allowed to reassert her continuum of negligent treatment theory regarding Dr. Olson and Hamilton.

[11] For purposes of our analysis, the last date of alleged negligent conduct by Olson is August 3, 1992, and by Castillo is September 24, 1993. When continuous negligent treatment is alleged to have been provided to a patient, the statute of limitations on a medical malpractice claim begins to run from the last date of alleged negligent conduct. *See Westphal v. E.I. du Pont de Nemours & Co., Inc.,* 192 Wis. 2d 347, 369, 531 N.W.2d 386 (Ct. App. 1995).

¶ 26. In determining whether § 893.16 applies to any of the limitation periods in § 893.55, we first observe the absence of any language in either statute that precludes them from operating in concert. To the contrary, language in § 893.16 and in § 893.56—which is a companion limitations statute to § 893.55— strongly indicates that they are meant to apply in tandem.

¶ 27. When the legislature revised and recreated Chapter 893 in 1979, the newly created disability tolling statute was expected to subject all limitation periods in the chapter to its provisions. This intention is manifested by the declaration that its tolling provision will affect the "period of limitation prescribed *in this chapter*" affecting a plaintiff's claim. Wis. Stat. § 893.16(1) (emphasis added). Of course, "this chapter" is Chapter 893, where § 893.55 is located.

¶ 28. This observation is especially important, because subsection (5) of § 893.16 explicitly exempts certain limitations periods located within Chapter 893 from its tolling requirements. Subsection (5) reads, in its relevant portions:

> This section applies only to statutes in this chapter limiting the time for commencement of an action or assertion of a defense or counterclaim except it does not apply to:
>
> . . . .
>
> (b) Extend the time limited by s. 893.33 [actions concerning real estate], 893.41 [breach of contract to marry], 893.59 [damage to highway or railway grade], 893.62 [usury], 893.73 to 893.76 [certain actions against governments], 893.77(3) [municipal power district bonds], 893.86 [recovery of legal fees paid for indigents] or 893.91 [actions related to forest fires] or

subch. VIII for commencement of an action or assertion of a defense or counterclaim[.]

As part of the overall structure of this statute, subsection (5) demonstrates that the legislature understood exactly how to enumerate those limitation periods in Chapter 893 that would not be affected by § 893.16. Section 893.55 is not one of those listed.[12]

¶ 29. Moreover, when the legislature enacts a new statute, it is presumed to know the new statute's relationship with existing and contemporaneously created statutory provisions, especially those directly affecting the statute. *See City of Milwaukee v. Kilgore,* 193 Wis. 2d 168, 183–84, 532 N.W.2d 690 (1995). A disability tolling statute substantively equivalent to current § 893.16 existed at the time the legislature created §§ 893.55 and 893.56.[13] Therefore, it is difficult to conceive how the legislature, fully aware of § 893.16's general applicability, would not have undertaken some

---

[12] If there were any remaining doubt about the applicability of § 893.16 to § 893.55, we observe that a 1979 Judicial Council Committee Note accompanying § 893.17 reads in part: "The general disability provisions in s. 893.16 *applicable to all statutes of limitation* in ch. 893 apply to all causes of action which accrue on or after July 1, 1980." (Emphasis added.)

[13] Prior to the repeal and recreation of Chapter 893 in 1980, the following sections operated to toll actions based on the disabilities now listed in § 893.16: Wis. Stat. §§ 893.135 (actions for recovery of real property), 893.33 (general disability tolling statute), 893.37 (requiring that a disability exist when a right of action accrued), and 893.38 (dealing with more than one disability) (1977). A disability tolling statute that includes insanity as a disability has existed since statehood. *See* Wis. Stat. ch. 127, § 12 (1849).

189

overt action to exempt § 893.55 from the disability tolling provision, if it so intended.

¶ 30. The legislature has indicated an express intent to curtail the application of § 893.16 to medical malpractice actions with respect to minors. Section 893.16 excludes children under the age of 18 that are bringing actions against health care providers from the tolling provisions of the statute. *See* Wis. Stat. § 893.16(1). The reason for this exclusion is that there is a specific statute for medical malpractice actions by minors. Wis. Stat. § 893.56. The grammatical structure of subsection (1) makes clear that any exception "for actions against health care providers" *does not* apply to the disability of mental illness.[14] If such a result had been intended, it could have been easily accomplished. The exception for claims by minors against health care providers was added when § 893.56 was created. *See* Ch. 390, Laws of 1977.[15] Hence, the exception for

---

[14] Wisconsin Stat. § 893.16(1) states: "If a person entitled to bring an action is, at the time the cause of action accrues, either under the age of 18 years, *except for actions against health care providers;* or mentally ill, the action may be commenced . . . ." The use of a semi-colon and the placement of the exception preceding the identification of mental illness as a qualifying disability lead us to conclude that the mentally ill are not governed by this exception.

[15] To be precise, the change to Wis. Stat. § 893.16(1) was actually made to § 893.33(1) (1977), *see* § 3, ch. 390, Laws of 1977, which was the primary predecessor to § 893.16 as it existed after the 1980 revisions to Chapter 893. Furthermore, the limitations on actions by minors against health care providers was first codified as Wis. Stat. § 893.235, *see* ch. 390, Laws of 1977, but was renumbered to Wis. Stat. § 893.56 in 1980. *See* § 28, ch. 323, Laws of 1979. Former § 893.235 specifically cross-referenced the time limitation in § 893.205(1), which was

minors in § 893.16(1) creates symmetry between these two statutes—a correlation entirely absent between §§ 893.16 and 893.55.

¶ 31. Wisconsin Stat. § 893.56 provides insight for another reason. Its language demonstrates how the legislature contemplated that the disability tolling provisions of § 893.16(1) generally apply to medical malpractice claims. The immediate predecessor to section 893.56 was added in 1978, three years after Chapter 655 was created. *See* Ch. 37, Laws of 1975, & Ch. 390, Laws of 1977. The new statute was premised on a legislative finding that the number of suits and damages arising from medical malpractice actions commenced by minor claimants had "increased tremendously" and needed to be restrained. *See* § 1(a), ch. 390, Laws of 1977; *see also Aicher,* 237 Wis. 2d 99, ¶ 22. Prior to this change, time limitations for medical malpractice suits brought on behalf of minors were governed by Wis. Stat. § 893.33 (1977), the relevant predecessor to § 893.16, which allowed claims until children were one year beyond the age of majority. *See* Wis. Stat. § 893.33(3) (1977).

¶ 32. Section 893.56 was created to *decrease* the time otherwise available to minors for bringing medical malpractice actions.[16] However, the statute specifically

the state's three-year statute of limitations for personal injury actions, which at that time included medical malpractice actions.

[16] The legislature declared in its legislative findings that "the interests of minor children can be adequately and fully protected by adopting the same time limit for bringing actions as applies to adults, except in the case of very young children." § 1(d), ch. 390, Laws of 1977. Furthermore, the Legislative Reference Bureau's analysis of the law states rather clearly, "This bill makes minors subject to the 3–year statute of limita-

exempts minors suffering under a disability by reason of mental illness from this new limitation.[17] If § 893.16 did not, and does not, apply to medical malpractice cases, there would be no reason to create § 893.56 for purposes of limiting the time in which minors could bring an action and little reason to include the language regarding insanity. Moreover, if § 893.16 does not apply to claims against health care providers governed by §§ 893.55 and 893.56, then minors under the age of 10 who *are* insane would be governed by some unknown limitations period. This whole statutory context reveals that, for one specific class of people who are accorded filing extensions because of their "disability," namely, minors—the legislature consciously incorporated a provision that modified the tolling provision when they file medical malpractice actions.[18] The same cannot be said about the class of people disabled by mental illness.

tions for the initiation of court actions for personal injury which currently applies to adults. An exception is made for very young children . . . ." Legislative Reference Bureau Drafting File for Chapter 390, Laws of 1977.

[17] The entire provision states:

> Health care providers; minors actions. Any person under the age of 18, *who is not under disability by reason of insanity,* developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by a health care provider within the time limitation under s. 893.55 or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section.

Wis. Stat. § 893.56 (emphasis added).

[18] Doctor Castillo reasons that § 893.56 supports a view that no general tolling exception to persons under a disability

192

¶ 33. Despite the foregoing analysis, Dr. Olson asserts that Chapter 655 exclusively governs medical malpractice claims and, therefore, § 893.16 must have no applicability. We believe that Dr. Olson overstates the exclusivity of Chapter 655 in the context of the disability tolling statute.

¶ 34. Chapter 655 is not exclusive in the sense that it is a *comprehensive* set of procedural rules for medical malpractice claims. Numerous statutes, including civil procedure and discovery statutes, that are not located in Chapter 655 apply to claims brought for medical malpractice. *See Hoffman v. Memorial Hosp. of Iowa County,* 196 Wis. 2d 505, 513–14, 538 N.W.2d 627 (Ct. App. 1995). As one example, rules governing the service of a summons under Wis. Stat. § 801.02 apply to medical malpractice tort claims as they do to other civil actions.[19] In addition, the limitations periods in

for mental illness applies to medical malpractice limitations. Because Castillo assumes that the disability tolling provision for minors in § 893.16 never applied to §§ 893.55 or 893.56, or the latter's predecessor, he sees the effect of § 893.56 as *relieving* a set of minors (those under the age of 10) from the effect of the five-year repose period. Castillo sees the lack of any "reprieve" for mentally ill claimants as forcing them into the general restrictions of § 893.55, with no exceptions. What this view fails to recognize is that the special limitations period for medical malpractice actions brought by minors *preceded* the creation of the five-year repose period in § 893.55. *Compare* ch. 390, Laws of 1977 (creating the predecessor to § 893.56), *with* ch. 323, Laws of 1979 (creating § 893.55).

[19] As the court of appeals explained, in rejecting the assertion that Wis. Stat. § 801.52's venue provisions are not applicable to actions against health care providers, despite § 655.009(3), "If we accept the view that ch. 655, Stats., is self-contained, subject to no outside rules of practice and procedure, there would be no discovery, summary judgment, or

§ 893.55(1)-(3) are nowhere mentioned or expressly incorporated by reference in Chapter 655. Section 893.55 supplements the procedures prescribed by Chapter 655.

¶ 35. The cases that Dr. Olson cites to support his exclusivity argument deal with issues of damages, which are matters that Chapter 655 and § 893.55 have expressly addressed by modifying the common law or other statutory law. For example, in *Rineck v. Johnson,* 155 Wis. 2d 659, 456 N.W.2d 336 (1990), *overruled in part by Chang v. State Farm Mut. Auto. Ins. Co.,* 182 Wis.2d 549, 514 N.W.2d 399 (1994), we stated that Chapter 655 *"modif[ies]* general civil law in instances where [it] speak[s] to a given subject." *Rineck,* 155 Wis. 2d at 665. The court noted that Chapter 655 "expressly delineates the damages limitation imposed in medical malpractice actions," *id.,* superseding the more-restrictive limits found in Wisconsin's general wrongful death statute. *Rineck* stands for the proposition that if general statutory provisions *conflict with* Chapter 655, the latter will trump the general statute. Neither § 893.55 nor Chapter 655 includes any *tolling* provision that conflicts with § 893.16.[20]

amendment of pleadings in medical malpractice cases because ch. 655 does not mention these procedures." *Hoffman v. Memorial Hosp. of Iowa County,* 196 Wis. 2d 505, 514, 538 N.W.2d 627 (Ct. App. 1995).

[20] Similarly, Olson oversimplifies the analysis by which the court of appeals concluded in *Lund v. Kokemoor,* 195 Wis. 2d 727, 537 N.W.2d 21 (Ct. App. 1995), that punitive damages were not allowed under Chapter 655 and § 893.55. The court engaged in a thorough statutory construction analysis in concluding that "the legislature intended subsec. (e) [of § 893.55] to be read as limiting the recovery of damages to those that are 'economic' in nature," which the court determined excludes punitive dam-

194

¶ 36. The defendants contend that the two exceptions to the limitation periods in § 893.55(1), namely, subsections (2) and (3) of § 893.55,[21] denote that the legislature did not intend to provide any additional exceptions, including those for persons disabled by mental illness. We do not find this contention persuasive. First, the exceptions granted in subsections (2) and (3) plainly relate to actions taken by a health care provider that obfuscate the availability of a claim. They have no relation to a patient's mental capacity to understand rights and file an action. They operate to extend the discovery rule in § 893.55(1)(b), not as tolling provisions.

ages. *Id.* at 734. Moreover, the parties in *Lund* had stipulated that the statutory scheme set forth in Chapter 655 and § 893.55(5) provided the exclusive *remedy* for their action and all medical malpractice actions. *Id.* at 732 n.1. We do not understand Storm as disputing that Chapter 655 and § 893.55 limit the remedies available to her; she merely argues that these statutes do not exclusively define the procedure by which she can achieve those remedies.

[21] Subsections (2) and (3) of Wis. Stat. § 893.55 provide:

(2) If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1), whichever is later.

(3) When a foreign object which has no therapeutic or diagnostic purpose or effect has been left in a patient's body, an action shall be commenced within one year after the patient is aware or, in the exercise of reasonable care, should have been aware of the presence of the object or within the time limitation provided by sub. (1), whichever is later.

195

¶ 37. Second, the legislature chose to place the periods of limitation for medical malpractice actions in Chapter 893, not in Chapter 655. It made this placement without expressing any intent that the tolling statute in § 893.16, which is written to apply to *all* periods of limitation in Chapter 893 unless expressly excluded by § 893.16(5), not apply to § 893.55.[22]

¶ 38. In sum, we conclude that the legislature intended for § 893.16 to toll the period of limitations in § 893.55(1)(a) for medical malpractice actions involving qualified claimants. Therefore, if Storm qualifies for a disability under § 893.16, she may extend the three-year limitations period up to five additional years.[23]

C. Mental Illness under Wis. Stat. § 893.16

¶ 39. In applying § 893.16 to medical malpractice actions, we must interpret the meaning of "mental illness" in § 893.16. The term is not defined in § 893.16

---

[22] Moreover, in *Landis* we recognized that additional statutes besides subsections (2) and (3) could operate to effectively override the statute of repose in § 893.55(1)(b). *See Landis,* 245 Wis. 2d 1, ¶ 41.

[23] Storm has maintained that her argument regarding the applicability of § 893.16 to § 893.55 needs only to be applied to § 893.55(1)(a)—and not to § 893.55(1)(b)—for her to survive summary judgment on statute of limitations grounds. Because of our conclusion in Part III.A that the statute of repose in § 893.55(1)(b) does not affect § 893.55(1)(a), we do not have to reach the issue of whether § 893.16 tolls any of the limitations periods in § 893.55(1)(b), including its statute of repose. The answering of this issue requires a deeper analysis of whether the legislature intended its reference to "the period of limitation prescribed in this chapter" to include a statute of repose in addition to statutes of limitations.

or anywhere else in Chapter 893 and, since it is capable of being understood by reasonably well-informed persons in more than one way, it is ambiguous. *See Landis,* 245 Wis. 2d 1, ¶ 15. Therefore, the court must "ascertain the legislative intent from the language of the statute in relation to a number of extrinsic factors including the legislative object intended to be accomplished." *Reyes v. Greatway Ins. Co.,* 227 Wis. 2d 357, 365, 597 N.W.2d 687 (1999) (citing *Kelley Co., Inc. v. Marquardt,* 172 Wis. 2d 234, 248, 493 N.W.2d 68 (1992), and *Terry v. Mongin Ins. Agency,* 105 Wis. 2d 575, 584, 314 N.W.2d 349 (1982)).

¶ 40. Storm suggests that "mental illness" in § 893.16(1) merely requires a diagnosis that a claimant suffers from a clinically recognized mental illness. She suggests that, since the other two disabilities to which § 893.16 has recently applied—imprisonment[24] and minority (under 18 years of age)—do not require any functional incapacity to qualify under the statute, her undisputed clinical diagnosis of having a multiple personality disorder should mean that she is mentally ill under § 893.16.

¶ 41. We disagree that a professional diagnosis of a clinically recognized mental illness is sufficient to establish a mental illness for purposes of § 893.16. In other contexts in which a person's insanity affects legal rights and responsibilities, such as the insanity defense in a criminal case, the standard rule is that insanity is

---

[24] Imprisonment was removed as a disability under § 893.16 in 1998. *See* 1997 Wis. Act 133, § 37. 1997 Wis. Act 133 was the Wisconsin Prisoner Litigation Reform Act.

a legal term, not a medical standard.[25] While we do not adopt the standard for insanity found in these other contexts, we agree that a statutory term requires a legal standard that may not be equivalent to a medical diagnosis. Likewise, the receipt of SSI benefits based on mental disability, which Storm has been qualified to receive since August 7, 1992, is not sufficient to prove mental illness under § 893.16. The disbursement of SSI benefits to someone who claims a mental impairment is based on whether the person is unable to engage in substantial gainful activity, including employment, for an extended period of time. *See* 42 U.S.C. § 1382c(a)(3)(A)-(B) (2000). It does not require that a person be unable to understand and act upon his or her legal rights. In fact, a person's act of applying for SSI benefits may be an indication that the person understands his or her legal rights.

¶ 42. We must therefore search for the meaning of the term "mental illness" through its common understanding and usage, along with the context and purpose of § 893.16. We note at the outset that, in 1998, the legislature replaced the terms "insanity" and "insane" with "mental illness" and "mentally ill" in § 893.16. 1997 Wis. Act 133, § 37. However, we do not see that any substantive change was intended or accomplished by

[25] *See Treglown v. DHSS,* 38 Wis. 2d 317, 323 n.5, 156 N.W.2d 363 (1968) (quoting *Simecek v. State,* 243 Wis. 439, 447, 10 N.W.2d 161 (1943), and citing *Kwosek v. State,* 8 Wis. 2d 640, 651, 100 N.W.2d 339 (1960)); *see also Kansas v. Hendricks,* 521 U.S. 346, 359 (1997) (stating that "the task of defining terms of a medical nature that have legal significance" is legislative, and that these definitions "do not [often] fit precisely with the definitions employed by the medical community"); 21 Am. Jur. 2d *Criminal Law* § 50 (1970).

this revision. Therefore, for the purpose of interpreting § 893.16, we take these terms to be synonymous.

¶ 43. Both lay and legal dictionaries provide definitions of mental illness and insanity that involve an examination of the actual state of mind of an individual and his or her ability to function at a reasonable level of conduct. For example, "mental illness" is defined as a "disorder in thought or mood so substantial that it impairs judgment, behavior, perceptions or reality, or the ability to cope with the ordinary demands of life." *Black's Law Dictionary* 999–1000 (7th ed. 1999).[26] A common usage of the term "insanity" is a "persistent mental disorder or derangement." *The American Heritage Dictionary of the English Language* 933 (3d ed. 1992).

¶ 44. Wisconsin statutes define insanity and mental illness in several places. Even though the statutory contexts in which these definitions occur are unrelated to § 893.16, they provide some insight.[27] The common

---

[26] Similarly, *Black's* defines "mental capacity" as "[t]he mental ability to understand the nature and effect of one's acts." *Black's Law Dictionary* 199 (7th ed. 1999).

[27] The only definition applicable to the totality of the Wisconsin Statutes is Wis. Stat. § 990.01(16), which directs that the phrase "insane persons" in Wisconsin laws includes "every idiot, non compos, lunatic and distracted person," unless such an interpretation is inconsistent with the manifest intent of the legislature. This somewhat dated definition has existed in Wisconsin since statehood. *See* Wis. Stat. ch. 4, § 1(7) (1849).

Wisconsin's Mental Health Act, Chapter 51, provides two definitions of the term, depending on how it is used in a statute. Wisconsin Stat. § 51.01(13) states:

> (a) "Mental illness" means mental disease to such extent that a person so afflicted requires care and treatment for his or her own welfare, or the welfare of others, or of the community.

199

(b) "Mental illness", for purposes of involuntary commitment, means a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life, but does not include alcoholism.

One or both of these definitions are incorporated by reference into numerous statutes, which include Wis. Stat. §§ 46.04 (relating to the "Anchorage program" for treatment of adolescent drug abusers), 48.415 (relating to grounds for termination of parental rights), 50.04(2r) (restricting admission of persons into nursing home), 50.36 (relating to hospital staff privileges for psychologists treating mentally ill patients).

Under Wisconsin's Protective Services System, mental illness is defined as a "mental disease to the extent that an afflicted person requires care, treatment or custody for his or her own welfare or the welfare of others or of the community." Wis. Stat. § 55.01(4m). This definition is incorporated by reference into Wis. Stat. § 940.285 (relating to crimes of abuse against vulnerable persons).

In determining a person's suitability for the state's sex offender registration system, inquiries are made into whether the victim of a defendant's act "suffered from a mental illness or mental deficiency that rendered him or her temporarily or permanently incapable of understanding or evaluating the consequences of his or her actions." Wis. Stat. §§ 971.17(1m)(b)3.d., 973.048(3)(d).

Section 971.15(1) governs an insanity defense in Wisconsin for criminal matters, and it provides: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law."

Finally, on occasion, mental illness had been defined consistent with federal law definitions of the term. *See* Wis. Stat. §§ 49.45(6c)(a)7., 49.498(g) (stating that under Wisconsin's

illness entails an evaluation or assessment of an individual's ability to function and to comprehend his or her actions. These definitions also reinforce the notion that when "mental illness" is used in the statutes, it is a legal term of art and not a medical standard.

¶ 45. If we combine these general, definitional understandings of insanity and mental illness with the legislative purpose of § 893.16, it is apparent that a mental illness under § 893.16 implicates a functional incapacitation. The definitions speak of a person's inability to function at an ordinary level of conduct in civil society. Meanwhile, § 893.16 serves to extend limitation periods for persons that have an actual or legal incapacity to bring a claim while they are under the disability recognized by the statute. *See Scott v. First State Ins. Co.,* 155 Wis. 2d 608, 615, 456 N.W.2d 152 (1990); *Korth v. Am. Family Ins. Co.,* 115 Wis. 2d 326, 332, 340 N.W.2d 494 (1983). It follows, therefore, that the disability must relate to one's inability to bring suit.[28]

¶ 46. We hold, for purposes of § 893.16(1)'s tolling provision, that a "mental illness" is a mental condition that renders a person functionally unable to understand or appreciate the situation giving rise to the legal claim so that the person can assert legal rights or

medical assistance program "mental illness" is given the meaning in 42 U.S.C. §§ 1396r(e) and 1396r(e)(7)(G)(i) (2000), respectively).

[28] We note that the marginalia located next to the state's disability tolling statute in older versions of the Wisconsin Statutes characterize the section as the "provision [applicable] in cases of *disability to sue.*" Wis. Stat. ch. 127, § 12 (1849) (emphasis added).

functionally unable to understand legal rights and appreciate the need to assert them.[29]

¶ 47. Each of the elements of this standard requires comment.

¶ 48. "Mental illness" under the statute is a seriously disabling mental condition. The condition may overlap developmental disability, but it is not congruent with developmental disability. *See* Wis. Stat. § 880.01(2). In addition, because "insanity" has been defined since statehood to include "idiots," the statute may include a person of such low intelligence and comprehension that the person is unable to appreciate and protect his or her interests. However, an impaired ability to assert legal rights resulting from aging is not sufficient to toll a statute of limitations, not because senility is always less incapacitating than mental illness, but because, historically, senility has not been equated with "insanity" or "mental illness." *Cf. Fiandaca v. Niehaus,* 570 S.W.2d 714, 717 (Mo. Ct. App. 1978) ("That a person is old, infirm, has a weakened mind, impaired mental capacities and is subject to influence and domination by her children does not establish that she is insane.").

¶ 49. A person is functionally unable to appreciate the situation giving rise to the legal claim when the person is unable to make a rational assessment of his or her own circumstances. If a person does not realize that he or she is delusional or mentally unstable or does not understand and appreciate that he or she has been

---

[29] A person who wishes to claim mental illness under § 893.16(1) must prove the condition by a preponderance of the evidence.

wronged, the person cannot be expected to protect his or her interests. A person that is mentally ill may have a basic grasp of lawyers, lawsuits, and the legal process but not recognize that his or her own situation requires the invocation of legal rights.

¶ 50. A person that is functionally unable to understand or appreciate the situation at issue will probably be unable to relate the situation to the need to assert legal rights. On the other hand, a person that is functionally unable to understand his or her legal rights may realize that something is amiss but be unable to relate the problem to a remedy in the law or be unable to reach out for assistance to assert legal rights. In short, the person's mental condition leads to an inability to bring suit.

¶ 51. The standard for mental illness that we articulate today is consistent with *Burnham v. Mitchell,* 34 Wis. 117, 135 (1874), which after more than 125 years is still the most relevant Wisconsin decision interpreting "insanity" for purposes of Wisconsin's disability tolling statute. *Burnham* involved a suit brought by the administrator of an estate to recover an amount due on a promissory note unpaid by a debtor of the decedent. *Id.* at 119. The debtor raised a statute of limitations defense. The estate replied that Wis. Stat. ch. 138, § 29 (1858),[30] the progenitor of § 893.16, provided an extended time in which to file the claim because of the decedent's "insanity." The parties dis-

---

[30] Wisconsin Stat. ch. 138, § 29 (1858) read in its relevant portions:

> If a person entitled to appeal or bring an action mentioned in this chapter ... be at the time the cause of action accrued, either,— ... 2. Insane; ... The time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought, can not

puted the degree of "insanity" required for tolling to occur, with the debtor advocating a total loss of understanding and the estate arguing that the decedent need not have had a total deprivation of mind but rather an insufficient mental ability to know what he was doing and the nature of the act done. *Id.* at 120–21. The trial court granted an instruction along the lines advanced by the estate. *Id.* at 127.

¶ 52. In answering "what constitutes insanity within the sprit and meaning" of the tolling provision, *id.* at 134, the *Burnham* court approved the less-restrictive instruction given to the jury. *Id.* at 136. Our court approved inquiry into whether a person had become so enfeebled and disordered by disease that the person did not act rationally, did not recognize the obvious and ordinary relation of things, but acted without such understanding or from delusion or insane impulse. *Id.* at 135. The court added, "when the capacity to do a certain act is in issue, the question is whether or not the alleged insane person had sufficient mental ability to know what he was doing, and the nature of the act done." *Id.* If he did not, then the limitations statute was tolled during his insanity, which in Burnham's case ultimately lasted until his death. *Id.* at 137. In reaching this conclusion, the court alluded to an equivalency between the mental capacity requirements demanded by law to execute a will, to enter into a contract, or to otherwise transact business. *Id.* at 136–37.

¶ 53. Surprisingly, no Wisconsin appellate cases since *Burnham* appear to have addressed the issue of what degree of mental illness or insanity is required for

be extended more than five years by any such disability, except infancy; nor can it be so extended in any case longer than one year after the disability ceases.

someone to benefit from Wisconsin's disability tolling statute. We believe that, on balance, *Burnham* accurately described the nature of a mental illness that is required to toll limitations periods, and its holding that a total deprivation of mind is not required remains fully valid. The standard we describe above is an effort to restate and contemporize our understanding of *Burnham* in the context of the modern disability tolling statute.

¶ 54. Our standard resembles those used by numerous other jurisdictions that have interpreted analogous tolling rules for persons under a disability of mental illness or insanity. The consensus definitions in other states usually include one or more of the following elements: (1) the mental disability must result in the inability to manage one's own personal affairs;[31] (2) a claimant must possess "an *overall inability* to function

[31] *See, e.g., Walker v. Pac. Basin Trading Co.*, 536 F.2d 344, 346 (10th Cir. 1976) (applying Oklahoma law and quoting from *Roberts v. Stith*, 383 P.2d 14 (Okla. 1963)); *Phillips v. Sugrue*, 800 F. Supp. 789, 791 (E.D. Ark. 1992) (applying Arkansas law); *Smith v. City of Reno*, 580 F. Supp. 591, 592 (D. Nev. 1984) (applying Nevada law); *Graboi v. Kibel*, 432 F. Supp. 572, 579 (S.D.N.Y. 1977) (applying New York law); *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 23 (Alaska 1980); *Allen v. Powell's Int'l, Inc.*, 518 P.2d 588, 589 (Ariz. Ct. App. 1974); *Pearl v. Pearl*, 177 P. 845, 846 (Cal. 1918); *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998); *Curlee v. Mock Enters., Inc.*, 327 S.E.2d 736, 742 (Ga. Ct. App. 1985); *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 297 (Ky. Ct. App. 1993); *Harrington v. Ramsey County*, 279 N.W.2d 791, 796 (Minn. 1979); *Dunkley v. Shoemate*, 465 S.E.2d 319, 321 (N.C. Ct. App. 1996); *Roe v. Gelineau*, 794 A.2d 476, 488 (R.I. 2002); *Wiggins v. Edwards*, 442 S.E.2d 169, 170 (S.C. 1994) (quoting 54 C.J.S. *Limitations of Actions* § 117 (1955)); *In re Kindle*, 509 N.W.2d 278, 280 (S.D. 1993).

in society that prevents plaintiffs from protecting their legal rights," *McAfee v. Cole,* 637 A.2d 463, 466 (Me. 1994); the inability to understand and protect one's legal rights is at the heart of most state definitions of insanity or mental illness for purpose of a tolling statute;[32] and (3) a person must fail to understand the nature and effect of his or her actions.[33] The definition of "mental illness" in § 893.16 that we announce today is consistent with, though not identical to, this consensus view.

¶ 55. Having defined "mental illness" under Wis. Stat. § 893.16, we conclude that summary judgment on this question is inappropriate at the present time. This factual issue was not addressed by the circuit court, nor was it otherwise adequately developed in the record before this court. It is an issue yet to be decided by the fact-finder. Specifically, a functional analysis of Storm's illness must be undertaken to determine whether she was mentally ill under the meaning of § 893.16(1). In addition, any disability that qualifies under this stan-

---

[32] *See, e.g., Walker,* 536 F.2d at 346; *Adkins,* 609 P.2d at 23; *Allen,* 518 P.2d at 589; *McCracken,* 717 A.2d at 354; *Langner v. Simpson,* 533 N.W.2d 511, 523 (Iowa 1995); *Boudreau v. Landry,* 536 N.E.2d 339, 341 (Mass. 1989); *Geisland v. Csutoras,* 261 N.W.2d 537, 538 (Mich. Ct. App. 1977); *Harrington,* 279 N.W.2d at 796; *Sacchi v. Blodig,* 341 N.W.2d 326, 330 (Neb. 1983); *BASF Corp. v. Symington,* 512 N.W.2d 692, 695 n.2 (N.D. 1994); *Kyle v. Green Acres at Verona, Inc.,* 207 A.2d 513, 521 (N.J. 1965); *Gaspar v. Village Missions,* 961 P.2d 286, 289 (Or. App. 1998); *Wiggins,* 442 S.E.2d at 170; *Kindle,* 509 N.W.2d at 283; *Collicott v. State ex rel. Workers' Safety & Comp. Div.,* 20 P.3d 1077, 1080 (Wyo. 2001).

[33] *See, e.g., Pearl,* 177 P. at 846; *Boudreau,* 536 N.E.2d at 341; *Wiggins,* 442 S.E.2d at 170; *Kindle,* 509 N.W.2d at 283.

dard must have existed when her cause of action accrued against each defendant.[34] *See* Wis. Stat. § 893.16(3). Finally, she must also have remained mentally ill until at least two years before she filed each of her claims against each of the defendants. *See* Wis. Stat. § 893.16(1).

D. Mental Illness under Wis. Stat. § 893.16 and the Retention of Legal Counsel

¶ 56. Regardless of how the foregoing issues are resolved, Dr. Castillo contends that Storm's disability ceased, as a matter of law, when she obtained legal counsel in April 1997 or no later than when she filed her initial compliant on September 9, 1997. The initial complaint failed to name Dr. Castillo. Doctor Castillo was not added as a defendant in the complaint until

---

[34] In oral argument, counsel for Dr. Olson and Legion Insurance argued that Storm could not have been mentally ill when her cause of action accrued. Counsel's reasoning, apparently, is that the disability did not exist at the time of the negligence, since it was Dr. Olson's alleged conduct that made Storm mentally ill. What matters for purposes of § 893.16 is that Storm was mentally ill when she received her *last* negligent treatment from Dr. Olson. Even if her mental illness was the result of Dr. Olson's earlier negligent treatment, "the question of [Storm's] insanity must be determined as of the end of the continuum of negligence." *Robinson,* 127 Wis. 2d at 291–92.

We also reject the proposition, again made in oral argument, that Storm needed to plead in her complaint that she was "mentally ill" in order to avail herself of § 893.16. As this court has previously stated, the expiration of a statute of limitations is an affirmative defense that must be raised by a defendant, and a plaintiff is not required to anticipate this defense by pleading against it in a complaint. *See Robinson,* 137 Wis. 2d at 16–17.

June 14, 2000. If Dr. Castillo's view were accepted, then § 893.16(1) required Storm to file her claims against Dr. Castillo within two years of September 9, 1997, at the latest, which she failed to do.

¶ 57. Doctor Castillo's argument is premised on the notion that Storm had the necessary mental capacity to understand her legal rights as of the time that she hired an attorney to represent her and to investigate her claims. He suggests that allowing Storm's action to be deemed timely against him would be contrary to the purpose of § 893.16 and would be inequitable. Storm contends that while a mentally ill person's act of contacting an attorney to investigate a lawsuit may trigger a "discovery" after which a claim must be brought within a specified time, *see Awve v. Physicians Ins. Co. of Wis., Inc.,* 181 Wis. 2d 815, 824, 512 N.W.2d 216 (Ct. App. 1994), such as under § 893.55(1)(b), it does not alter a plaintiff's mental illness for purposes of § 893.16.

¶ 58. We conclude that the retention of legal counsel does not *automatically* cause a plaintiff's mental illness, as we have defined it, to cease for purposes of § 893.16. This would hold true even if the retained counsel filed some cause of action on behalf of the mentally ill client. However, we also conclude that such legal consultation and filing are probative of a plaintiff's mental health and functional ability to appreciate and act upon his or her legal rights.

¶ 59. We reject Dr. Castillo's bright-line rule on this issue for several reasons. First, the legislature has determined that mentally ill persons may extend the time within which to file their causes of action to a maximum of five additional years, so long as the disability continues. While the overarching purpose of § 893.16 is to ensure that rights are not lost because of a person's inability to comprehend or assert a claim, *see*

208

*Scott*, 155 Wis. 2d at 615; *Korth*, 115 Wis. 2d at 332, and the hiring of legal counsel evinces a degree of legal wherewithal, a mentally ill person may acquire legal representation through means unrelated to an ability to appreciate or act upon his or her rights. We can envision instances in which a client's mental illness could significantly hinder his or her ability to assist retained counsel in timely filing a claim or naming all defendants.

¶ 60. Second, under Dr. Castillo's view, the retention of an attorney would cause a mentally ill person to lose the ability to raise claims at an earlier time than if counsel had not been retained. It is not sound policy to devise a rule whereby newly retained legal counsel for a mentally ill person must rush to review *all* possible claims held by the disabled plaintiff—no matter how distant in time or distant in subject matter the claims are from the claims inspiring the attorney's retention —simply to avoid being cut off. Although the facts of this case involve a claim closely related to those for which counsel was hired, Dr. Castillo's proffered rule would not be limited to such a circumstance.

¶ 61. Third, Dr. Castillo offers scant legal authority in support of his argument. He relies principally on *Todish v. Cigna Corp.*, 206 F.3d 303 (3d Cir. 2000), a decision finding that a plaintiff did not possess the requisite mental illness for purposes of Indiana's tolling statute for insane persons. We believe that Dr. Castillo misreads the import of the *Todish* decision. The Third Circuit did not hold that a mentally ill plaintiff's retention of legal counsel and/or that counsel's filing of a claim on a plaintiff's behalf would *alone* signal the cessation of the plaintiff's mental illness for purposes of the tolling statute. Rather, the court noted numerous indicia for why no reasonable jury could find that that

209

plaintiff was "insane" during the time the applicable limitations period for her action expired. *Id.* at 306. Many of these indicia were unrelated to any contact that she had with legal counsel. *Id.*[35] The court concluded that *all* "[t]hese actions demonstrate that despite Todish's mental impairments, she retained an ability to understand her legal rights and to institute legal action within the six-year statutory period." *Id.*[36]

¶ 62. Overall, an attorney's appreciation of legal rights and competency in bringing legal claims cannot be applied vicariously to a mentally ill client for purposes of timely filing actions. There may be situations in which a mentally ill plaintiff is unable to assist his or her attorney in the same manner as a sane person.

[35] Among the factors found to exist during Todish's alleged insanity were: (1) she applied for and was accepted to law school; (2) while attempting to hire legal counsel to represent her at a grievance hearing, she attempted to obtain a transcript of the hearing on two occasions and she actively requested information from the union representative at the hearing about taking an appeal if the results were unfavorable; (3) she applied for Social Security benefits on three separate occasions (including one instance where she sought reconsideration of a denial and retained counsel to represent her on appeal); (4) she aggressively pursued disability pension benefits from her former employer; (5) she worked as a teacher in three community colleges; and (6) she completed all requirements for a Master's of Arts degree except for the thesis. *Todish v. Cigna Corp.*, 206 F.3d 303, 306 (3d Cir. 2000)

[36] The other cases Dr. Castillo cites deal in their relevant portions with the effect of retaining counsel and the filing of a suit on the *discovery* of an available claim, not on the termination of a mental illness for purposes of a tolling statute. *See Groom v. Prof'ls. Ins. Co.*, 179 Wis. 2d 241, 507 N.W.2d 121 (Ct. App. 1993); *Auve v. Physicians Ins. Co. of Wis., Inc.*, 181 Wis. 2d 815, 512 N.W.2d 216 (Ct. App. 1994). They are therefore inapposite.

Therefore, absent anything in the tolling statute to the contrary, we do not find that the retention of legal counsel by itself ends a person's mental illness under § 893.16 as a matter of law.

¶ 63. Even if the retention of counsel does not mark the end of the disability, Dr. Castillo maintains that Storm's disability must have ceased in this case when her legal counsel filed an action on her behalf. He argues that when Storm's counsel filed suit against the other defendants in this action on September 9, 1997, she faced no impediment in asserting her legal rights and that she had all the information necessary to pursue additional claims against Dr. Castillo. We agree that, under these circumstances, any fears that newly retained legal counsel will be obligated to review *all* legal claims of the mentally ill person they represent are diminished. In this case, the claims that Storm could be deemed "capable" of advancing against Dr. Castillo *were directly related to* the reason that counsel was retained.

¶ 64. However, the filing of a lawsuit in behalf of a mentally ill person does not invariably establish a plaintiff's capacity to understand and act upon his or her legal rights. Nor is such a finding appropriate as a matter of law in this case. Rather, we believe that when an attorney acts on a plaintiff's behalf, as in filing a lawsuit, such an occurrence serves as one of the many possible indicia that the plaintiff's actual mental state is sufficient to appreciate the availability of her legal rights and her means of legal recourse. *See generally Bestwina v. Village Bank,* 767 P.2d 338, 340 (Mont. 1989) ("Retention of counsel is evidence, although not conclusive, of a person's legal capacity for purposes of tolling the statute of limitations.") (citing cases). It is for the trier of fact to determine if, under the circum-

stances of each case, such activity does or does not exhibit the requisite level of mental health.

¶ 65. Therefore, as part of our remand to determine whether Storm possessed a mental illness that made her unable to understand and act upon her legal rights, her activity regarding the hiring and use of legal counsel may serve as evidence of her mental capabilities, but it will not alone be dispositive.

## IV. CONCLUSION

¶ 66. Based on the foregoing reasons, we conclude that the five-year statute of repose in Wis. Stat. § 893.55(1)(b) does not apply to the injury accrual rule in § 893.55(1)(a). In addition, the tolling provision in § 893.16 may operate to extend the time for filing a medical malpractice action beyond the three-year period in paragraph (a), provided that a factual finding is made that the person was mentally ill at the time her causes of action accrued. This finding of "mental illness" requires that the person possess a mental condition that renders her functionally unable to understand or appreciate the situation giving rise to the legal claim so that she can assert legal rights or functionally unable to understand legal rights and appreciate the need to assert them. We also hold that retention of legal counsel by a mentally ill person does not, as a matter of law, cause that person's mental illness to cease for purposes of § 893.16.

¶ 67. Applying these principles, we reverse the circuit court's grant of summary judgment and dismissal of Dr. Olson, Legion Insurance, and Dr. Castillo from this action. We remand this action to the circuit court for factual determinations regarding Sheri Storm's mental health on the dates relevant to her use

of Wis. Stat. § 893.16. If Storm was mentally ill at the time her causes of action accrued against each defendant, and if her illness did not cease at a time more than two years before she filed a claim against any of the individual defendants, then Storm timely filed her claims alleging medical malpractice against Doctors Olson and Castillo.

*By the Court.*—The judgment of the circuit court is reversed and the cause is remanded.